(No. 37166.—

JESSE KINNETT, Exr., Appellant, *vs.* WILLIAM L. HOOD, Successor Conservator, Appellee.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

PREE & PREE, of Springfield, for appellant.

FRED N. HERR, of Waverly, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from an order of the county court of Morgan County, sitting in probate, directing the conservator of Wayne A. Kinnett's widow to renounce Kinnett's will. A freehold is involved.

Wayne A. Kinnett died testate on June 30, 1961, leaving no children but leaving Mae E. Kinnett, his incompetent widow, and collateral heirs. He died seized of real and personal property of a value in excess of $200,000. By the terms of his will he made $25,500 in bequests, devised a life estate in his home to his widow, and left the remainder of his estate to his nephew, James Kinnett, in trust with directions to pay all expenses and to disburse $6000 per year to his widow, if necessary, from income and principal. His trustee was also empowered to pay further sums from the principal necessary to maintain his wife's usual and customary position in life.

The widow had been declared incompetent on April 28, 1959. The public conservator was appointed as successor conservator on September 18, 1961, about six weeks after admission of the will to probate. Shortly thereafter the conservator filed a petition for authorization to renounce the will on behalf of the incompetent. The court ordered the

renunciation and it was executed and filed by the conservator.

Our probate courts have jurisdiction under their equitable powers to determine whether an incompetent shall take under his or her spouse's will or renounce the provisions of the will. (*Sippel* v. *Wolff*, 333 Ill. 284; *In re Estate of Reighard*, 402 Ill. 364; *First Nat. Bank of Danville* v. *McMillan*, 12 Ill.2d 61; see, also, *Rock Island Bank & Trust Co.* v. *First Nat. Bank*, 26 Ill.2d 47. We have, however, not heretofore had occasion to discuss some of the factors which a court may consider in making such determination.

Courts are in agreement that the primary consideration is the best interest of the incompetent. There is a wide divirgence of opinion, however, as to what constitutes the best interest of an incompetent. In reviewing the cases from foreign jurisdictions the real difference seems to be that one school of thought (apparently the minority,) would consider the welfare of the incompetent to mean the greatest amount of property obtainable absolutely or in fee to the exclusion of other considerations. The majority of jurisdictions on the other hand, would consider all the surrounding circumstances, where ample provision is made in the will for the welfare and comfort of the incompetent spouse, including the testamentary design and purpose of the testator and that election which the spouse might have made if he or she were competent. (See Annotations, 74 ALR 456, 147 ALR 340; 97 C.J.S. Wills, sec. 1247(2).) There are strong arguments for each view, as illustrated by the majority expressed in *Van Stunwyck* v. *Washburn*, 59 Wis. 483, 17 N.W. 289, and the minority in *Emmert* v. *Hill*, 226 Ill. App. 1.

We believe that the minority view is too restrictive. By placing the election purely upon monetary consideration, too much emphasis is placed upon the best interest of incompetents' estates (and their heirs after death), with a possible

detriment to the personal welfare, comfort and best interest of the incompetent. As the Wisconsin court noted in the *Washburn* case: "But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion." (59 Wis. 483.) The majority view that all of the surrounding facts and circumstances should be taken into consideration by a court in order to make the election to take under a will or against it seems to be the more equitable.

It is impractical to delineate the factors which would apply in every case or, in fact, the relative weight to be given each in order to determine that which is to the best interest of the incompetent. Certainly the factor of value is important and in many cases would outweigh all others. Adequacy of funds for maintenance, care, medication, nursing, personal needs and comforts under a will as compared to those obtainable by taking against the will must be considered. If adequate and ample provision has been made it seems only equitable and just that a court not disregard the deceased spouse's desires in the disposition of his estate by diverting it to others because the survivor might well have considered this factor. Since the renunciation provision is for the benefit of the incompetent spouse, the interest of the heirs of the surviving incompetent spouse should not be considered.

We now apply the foregoing views to the record before us. The incompetent is 68 years of age with a life expectancy of 11.17 years. She had previously been declared incompetent in 1950 and has not enjoyed good health since. She is hospitalized and appears to be permanently mentally and physically incapacitated. The present cost of maintaining her is approximately $10,000 per year and probably will not be decreased. Various computations have been made by the trial court and counsel comparing the amounts by which her estate would be enhanced if she takes under the will and lives her full expectancy with the amount she would take

by renouncing. Due to such variables as value of the estate (estimates run from $200,000 to $260,000) and difference in projections of income, there are some differences. We think it unnecessary to detail the several computations. Each indicates that her estate would be less under the commuted value of a $10,000 annuity than the amount to which she is entitled if she takes against the will. Under the trial court's analysis, if she renounces, she would receive approximately $100,000 plus income thereon over the time of her expectancy and, after deducting $111,700 for her maintenance during the period, her estate at death would be approximately $25,000. On the other hand, if she takes under the will the commuted value of her annuity would be about $73,987, and with the same maintenance cost there would be no enhancement. Her doctor testified that he would be surprised if she lived two years, however he qualified that opinion by also saying that six months before he would have been surprised had she lived two weeks. Thus, from a purely monetary standpoint the election to renounce was justified because her estate would thereby be increased. But as we have noted other considerations must be taken into account.

There was no effort on the part of the testator to disinherit his wife. On the contrary, the will was carefully designed to protect her best interests. The estate was to be kept intact to provide the maximum security for her. Not only was she given all the income, if necessary, but the trustee was authorized to invade the principal, without limit, to maintain her usual and customary position in life. The net result is that the incompetent is protected by the *full* measure of the estate if necessary. If she lives her full expectancy or beyond, or if her surgical and other expenses are greater than anticipated, there will be more income and property available for her care and comfort. True, if she does not live to her expectancy and her needs are not increased, her estate would be larger. But that would mean

nothing to her personally. Her condition is such than anything beyond her maximum needs would be worthless. She could not use it, give it away or dispose of it by will. It is apparent that the right to renounce is one for the benefit of the surviving spouse, and yet the only benefit to be derived through renunciation in this case would inure to the heirs of the incompetent.

We conclude that under all the circumstances the order authorizing renunciation was improvidently entered. It is therefore unnecessary to consider the alleged procedural errors.

The order of the county court of Morgan County, sitting in probate, is reversed and the renunciation filed thereunder is vacated; and the cause is remanded with directions to enter an order in compliance herewith.

*Reversed and remanded, with directions.*