IN RE. ESTATE OF JOSEPH D. CLARKSON, DECEASED.
EVELYN BELL. CLARKSON, APPELLEE, V. FIRST NATIONAL
BANK OF OMAHA, SUCCESSOR EXECUTOR OF THE. ESTATE
OF JOSEPH D. CLARKSON, DECEASED, APPELLANT.

226 N. W. 2d 334

Filed February 27, 1975. No. 39529.

Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for appellant.

Erickson, Sederstrom, Johnson & Fortune, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This is an action under section 30-108 (2), R. R. S. 1943. It involves an election on behalf of an incompetent surviving spouse to either take under or against her husband's will. The District Court vacated an order of the county court electing on behalf of the widow to take the provision made for her in her husband's will. The executor prosecutes this appeal. We affirm.

Joseph D. Clarkson, deceased, married Evelyn Bell Clarkson April 16, 1953. Mr. Clarkson had two daughters

from a prior marriage. Mrs. Clarkson had a son and a daughter by a prior marriage. No children were born of the second marriage. Mrs. Clarkson, who is 80 years of age, has been mentally incompetent since June 1965. The record indicates that her chances of recovery were and are nil. The will in question was executed November 18, 1969. The inventory filed in the estate indicates the value of the estate to be $1,229,263.56. The report of the guardian ad litem indicates the net value of the estate is $1,372,224. Only $62,000 is real estate, a Missouri farm valued at $40,000 and the residence property valued at $22,000.

The will makes the following provision for the incompetent: "If my wife, Evelyn Bell Clarkson, survives me, I give, devise and bequeath to the FIRST NATIONAL BANK OF OMAHA, as TRUSTEE for my said wife, an amount equal to one-fourth (1/4) of the value of my net estate as finally determined for Federal Estate Tax purposes, unreduced by any taxes." The will directs the trustee to pay all income therefrom to Mrs. Clarkson and in addition provides for such amounts of principal to be paid to her from time to time as the trustee deems necessary or desirable to provide for her proper support and maintenance. The will further provides that upon Mrs. Clarkson's death the trust estate shall terminate and the assets remaining in the trust shall then be distributed and disposed of to such persons in such manner as Mrs. Clarkson by her last will and testament shall direct and appoint. If Mrs. Clarkson fails to exercise the general testamentary power of appointment upon her death, the will provides that the remaining assets shall be distributed as follows: "Twenty-five Thousand Dollars ($25,000) thereof shall be paid to each of my wife's children, JERRY W. MENCK and PEGGY LOU McVEA, with the children of either of them who may be then deceased to take equally the share which the parent would have taken if then living; and the balance of said assets remaining shall be dis-

tributed to my daughters, HELEN E. CLARKSON and RUTH C. BOLLINGER, share and share alike." The will was made at a time when Mrs. Clarkson was incompetent. There is no possibility of her exercising the power of appointment granted in the will because her condition cannot improve.

Pursuant to the provisions of section 30-108(2), R. R. S. 1943, the Douglas county court appointed Jack W. Marer as guardian ad litem to make such investigation as he deemed necessary and to report his recommendation to the court as to whether the court should elect on behalf of Mrs. Clarkson to take the provisions made for her under the last will and testament of Joseph D. Clarkson or to take by descent and distribution as provided by law. The guardian ad litem, after investigation, filed a report recommending that the court renounce the provision made for Evelyn Clarkson under the last will and testament of Joseph D. Clarkson and elect to take by descent and distribution as provided by law. The county judge declined to accept the recommendation. He determined her interests were not better served by renouncing the will but that the equities of the matter dictated that the testamentary plan of Joseph D. Clarkson should be adhered to.

The special guardian of the incompetent prosecuted an appeal to the District Court for Douglas County. The District Judge disagreed with the opinion of the county judge and followed the recommendation made by the guardian ad litem. He found an estate in fee title would be of greater value than a beneficial interest in a trust. He specifically determined that the best interests of the surviving spouse would require renouncing the provisions of the will and taking the estate in fee with full incidence of ownership, notwithstanding that title would vest in her guardian who would have fiduciary limitations on its disposal.

The incompetent, as the second wife of deceased, would receive one-fourth of the estate if she takes under

the statute rather than the will. The parties are in agreement that there is no dollar difference between what Mr. Clarkson left his wife in trust and what she would take by an election. The difference comes about in that a fee title is of much greater value than a beneficial interest in the trust.

While this is a case of first impression in Nebraska, the question has arisen in many other jurisdictions. There is an exhaustive annotation on the subject at page 10 of 3 A. L. R. 3d. As this annotation will illustrate, there is an irreconcilable conflict in the decisions. This conflict arises because of various theories used by the courts in interpreting and defining the meaning of the words "best interests" or similar words which are found in the several statutes under consideration.

Section 30-108(2), R. R. S. 1943, provides as follows: "In the event such surviving husband or wife shall be, at the time of the issuance of letters testamentary, insane or otherwise mentally incompetent to make such election, or shall become insane or mentally incompetent after the time of the issuance of said letters and prior to the expiration of the time limited in subsection (1) of this section for the making of an election, the county court in which the estate of the deceased is being probated shall, by order entered upon the records of said court, either upon its own initiative or upon the petition or application of any person interested in the estate of the deceased, appoint a guardian ad litem whose duty it shall be to make such investigation as shall be necessary and thereupon forthwith report to the court his recommendation as to whether the court should elect on behalf of any such husband or wife to take the provision made for him or her under the will of the deceased, or to take by inheritance and descent and distribution as provided by law. Upon the filing of such report the court shall appoint a time and place of hearing thereon of which notice shall be given to all persons interested in the estate of the deceased as is required to be given

precedent to the admission of a will to probate. All persons interested in said matter may be present and heard at such hearing. The court upon said hearing shall make such election as it deems the best interests of such surviving husband or wife shall require, which election shall be entered upon the records of said court. Any person interested in said estate and affected by such election by the court shall have the right to appeal from said election to the district court of the county in which said county court is located. The procedure on such appeal shall be as provided in sections 30-1601 to 30-1610."

In the so-called minority view, all the decisions in one way or another indicate that the best interests of the incompetent will be served by electing the method which is the most valuable to the surviving spouse. This usually means the one having the greater pecuniary value is the one selected.

The language of the various statutes may differ but essentially most of them will provide that the election should be made which is to the best interests, advantage, welfare, or the like of the incompetent person. Our statute provides that the court should make such election as it deems *the best interests* of the surviving wife or husband shall require. This seems to narrow the range of consideration.

The majority view, as stated in Kinnett v. Hood (1962), 25 Ill. 2d 600, 185 N. E. 2d 888, 3 A. L. R. 3d 1, is that all the surrounding facts and circumstances should be taken into consideration by the court in order to make the election to take under the will or against it. In Kinnett the court says: "It is impractical to delineate the factors which would apply in every case or, in fact, the relative weight to be given each in order to determine what is to the best interest of the incompetent."

The majority rule emphasizes other considerations than monetary. It characterizes the minority cases as placing the election purely on monetary standards or what would result in the larger pecuniary value, to the detri-

ment of other considerations. We concede that in some instances there may be other considerations than monetary which may promote the best interests of the incompetent. What, however, are those other considerations? It is impractical to delineate factors which could apply in every case or to specify the relative weight which should be given to such other possible considerations. If we follow our statutes, the best interests of an incompetent in most instances will require the election which will result in the larger pecuniary value. We cannot agree that the preservation of the decedent's estate plan is a major consideration as found by the county judge and as it appears to be in many cases espousing the majority view. Under our law the testator's testamentary desires have little or no importance in relation to the best interests of the surviving spouse.

In Nebraska we must start with the premise that the testator is presumed to know the law and that his surviving spouse may lawfully exercise her right to take against his will irrespective of his estate plan. In re Estate of Hunter (1935), 129 Neb. 529, 262 N. W. 41. In Hunter we said: "A testator is presumed to know that his widow may lawfully exercise her right under the statute to take against the will, and that such right is paramount to his will." We further held that such election did not render the will inoperative. As to other persons it will be enforced as nearly as may be in accordance with the intention of the testator.

Many of the majority view cases criticize the minority cases, suggesting that they tend to sanction: (1) The interests of the heirs of the incompetent as a consideration; and (2) give too much weight to what the surviving spouse would have done had she made her own election as a consideration. We are in full accord with the view that the interests of possible heirs of the incompetent should play no part in the decision. We would not, however, entirely ignore what the surviving spouse might have done had she made her own election.

We note that while the majority view would not permit a consideration of what the surviving spouse would have done in election, the cases seem to advance the notion that whether the surviving spouse would have wanted to abide by her husband's will should be considered. See Kinnett v. Hood, *supra*. No one can ever say exactly what the incompetent would have done if competent. If, however, we always assume that the surviving spouse would make the election which was in her best interests, there is no problem. If we follow that criteria, we are merely carrying out the intent of our statute.

It seems a little inconsistent under our law to say, as do some of the majority cases, that the election by the court to renounce the will should be made only if necessary to provide for the widow's needs. This would write a restriction into our statute. The statute requires the court to make the election which it deems is in the best interests of the incompetent spouse. This must be made without reference to whether she may be provided for otherwise. We observe that neither section 30-107 nor section 30-108, R. R. S. 1943, which create the right of election and provide the necessary procedural steps, make any mention of or suggest any restrictions under which an election might be made. While a competent surviving spouse may elect to take against the will, even if it would seem obviously against her best interests to do so, a court in making the choice for an incompetent does not have that privilege. It must consider only the best interests of the incompetent.

On the record we find no considerations other than the monetary value of the estate. We find that an estate in fee is of much greater value than a beneficial interest in a trust. We agree with the District Judge that the best interests of the surviving spouse require taking the estate in fee with full incidents of ownership notwithstanding the title would vest in her guardian who would have fiduciary limitations on its disposal.

The judgment is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The testator's will here left to his wife, if she survived him, the exact amount and the specific share of his estate which she would receive if he had no will, but he left it in trust for her proper support and maintenance. The corporate trustee had the power to use all the income and all the principal for those purposes. The wife was given a full power of appointment of all remaining property on her death. At the time he executed the will his wife was incompetent and had been incompetent for some 4 years.

The majority opinion here determines that the best interests of the surviving spouse are better served by renouncing the will because "a fee title is of much greater value than a beneficial interest in the trust." That might well be so if the surviving spouse were competent, but she is not.

While technically an incompetent might be said to have a fee title, in literal practical fact an incompetent during his or her lifetime has no greater beneficial interest in property managed on his or her behalf by a guardian than in property managed by a trustee under the powers granted by the will here.

If there was any reasonable prospect that an incompetent might recover, the basis for the majority opinion might be at least arguably supportable. In this case, however, the evidence is simply undisputed that the surviving spouse is now and always will be incompetent. The entire foundation for the majority opinion here must, and does, therefore, rest on the wholly unsupported conclusion that $343,000 held and used for the maintenance and support of the incompetent surviving spouse during her lifetime has a greater value in the hands of a guardian than it does in the hands of a trustee under the will.

The majority opinion accepts the universal rule that

the interests of possible heirs of an incompetent should play no part in the decision but states that the incompetent's estate must not be ignored. Under our Nebraska statute, the right of a surviving spouse to renounce the will and take a statutory share is personal to the surviving spouse and under no circumstances does it extend to an executor or administrator of the survivor's estate, or to heirs. If a surviving spouse dies before the expiration of the time for exercising the right, the right lapses altogether. The right of election is clearly for the benefit of the surviving spouse alone. Section 30-2315, R. S. Supp., 1974, which does not go into effect until January 1, 1977, makes it very clear that in the case of a protected person, such as the incompetent spouse here, the court shall exercise the election only "after finding that exercise is in the best interests of the protected person *during his probable life expectancy*." (Emphasis ours.)

The majority opinion here is not only too restrictive as applied in this case, but the impact of the holding upon other cases not presently before us has been largely ignored. It should be noted first that the trust provisions of the will here were obviously drawn to permit the share of the surviving spouse to qualify for the marital deduction under the federal estate tax laws. It must be noted too that thousands of Nebraska citizens have drawn wills which contain similar trust provisions which fully qualify for marital deduction treatment under federal laws. Because of the impact of estate and inheritance taxes, many husbands and wives have drawn and prepared separate wills to fit their joint estate tax plans. The majority opinion, if followed in the future, will now mean that the county court will be required to renounce a will on behalf of an incompetent surviving spouse whenever the will leaves the share of the surviving spouse in trust under marital deduction provisions similar to those here, even though the amount received by the incompetent's guardian will be identically the same.

The holding necessarily poses a critical problem for estate tax planners where incompetence of a surviving spouse is involved.

The rule adopted by the majority of courts offers a much broader and sounder basis for making the appropriate election on behalf of an incompetent surviving spouse. It likewise permits an equitable approach on an individual case basis. The majority rule and the distinctions between it and the minority rule are well set out in the leading case of Kinnett v. Hood, 25 Ill. 2d 600, 185 N. E. 2d 888, 3 A. L. R. 3d 1. We quote from that case: "Courts are in agreement that the primary consideration is the best interest of the incompetent. There is a wide divergence of opinion, however, as to what constitutes the best interest of an incompetent. In reviewing the cases from foreign jurisdictions the real difference seems to be that one school of thought (apparently the minority,) would consider the welfare of the incompetent to mean the greatest amount of property obtainable absolutely or in fee to the exclusion of other considerations. The majority of jurisdictions on the other hand, would consider all the surrounding circumstances, where ample provision is made in the will for the welfare and comfort of the incompetent spouse, including the testamentary design and purpose of the testator and that election which the spouse might have made if he or she were competent. * * * There are strong arguments for each view, * * *.

"We believe that the minority view is too restrictive. By placing the election purely upon monetary consideration, too much emphasis is placed upon the best interest of incompetents' estates (and their heirs after death), with a possible detriment to the personal welfare, comfort and best interest of the incompetent. * * * The majority view that all of the surrounding facts and circumstances should be taken into consideration by a court in order to make the election to take under a will or against it seems to be the more equitable."

Where, as here, the trust provisions in a will for the welfare and comfort of an incompetent surviving spouse during her lifetime are at least equal to, or better than, the statutory provisions which regulate the providing of such welfare and comfort by a guardian, and the amount available is ample and exactly the same in either case, the testator's property should ordinarily be permitted to pass under the will.

Section 30-108 (2), R. R. S. 1943, specifically places the responsibility for making the election for an incompetent spouse upon the county court. In this case that court made specific findings of fact, none of which are challenged. The county court then exercised the election to take under the will. The county court properly and correctly found the facts and exercised its judicial discretion under section 30-108 (2), R. R. S. 1943, and its judgment should be affirmed.

NEWTON and CLINTON, JJ., join in this dissent.