*In re* ESTATE OF JOHN D. LYNCH, JR., Deceased.—(MONMOUTH TRUST AND SAVINGS BANK, Ex'r of the Last Will and Testament of Lillian B. Lynch, Deceased, Petitioner-Appellee, *v.* DAVID MISSAVAGE *et al.*, Respondents-Appellants.)

Third District   No. 80-466

Opinion filed May 21, 1981.

Robert L. Ellison, of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellants.

Richard L. Whitman, Sr., of Kritzer, Stansell, Critser & Whitman, of Monmouth, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Renunciation of will by conservator.

■■ The bare-bones record from below is slipshod and slack. But from it we conclude that the trial court erred in permitting the renunciation.

We reverse.

John D. Lynch, Jr., died January 9, 1980, leaving a will and a wife.

His 94-year-old widow's conservator, Citizens National Bank of Macomb, petitioned April 11, 1980, to renounce the will and take her statutory one-third share of his estate. (Ill. Rev. Stat. 1979, ch. 110½, par. 2—8(a).) The conservator also requested a spouse's award of $40,000. (Ill. Rev. Stat. 1979, ch. 110½, par. 15—1.) After hearing evidence July 31, 1980, on the widow's financial needs and health, the trial court granted the conservator's petition to renounce and also made the requested award. The conservator renounced the will August 1, 1980. The respondents question only the decision to permit the renunciation and do not now attack the widow's award.

Lynch signed the will in question July 28, 1979. He left as survivors his wife, Lillian, and two daughters, Virginia Lucille Missavage and Mary Louise Lemoine. Virginia has ten children, six sons and four daughters. Mary has three sons. The bulk of Lynch's estate went to one of his grandsons, David Missavage. In his will Lynch wrote that David "was raised by me and has been considered by me like a son."

The will bequeathed nothing to the four granddaughters or the three Lemoine grandsons and says that "they have been provided for by other means." Lynch gave five of his grandsons—all the Missavage boys except David—$5,000 each, and $2,000 to a Monmouth church.

In the will John Lynch gave Lillian his car, home, personal effects, and household goods. Lynch devised to David Missavage, as trustee, all his real estate except the home; the income from the trust was to go to one of the daughters, Virginia Missavage. Upon her death the trust was to terminate and the assets were to go to David, who was also named executor of the will.

Lillian Lynch was born November 20, 1886. She was declared incompetent November 17, 1978, and a conservator was appointed for her at that time. Unfortunately, the record in this cause does not include the order appointing a conservator. At the time of the hearing on the petition to renounce the will, Mrs. Lynch's health was good; her blood pressure and heart were excellent and the edema in her legs was greatly reduced. Although Mrs. Lynch was able to take care of her physical needs by herself and did some housework and lived at home, it was necessary that someone be with her at all times. Mrs. Lynch died October 30, 1980, and the executor of her estate has been substituted as the petitioner.

■■ ■ Although a competent person may renounce a spouse's will *ex parte,* conservators of incompetent persons must be granted leave to renounce, after adversary proceedings. (*In re Estate of Dalton* (1975), 60 Ill. 2d 451, 328 N.E.2d 257.) One relatively simple method for deciding whether a conservator should be allowed to renounce a will is to compare

the value of the property that will pass to the surviving spouse under the will with the size of the one-third share of the estate; if the only criterion for the decision is monetary, then the course of action producing the greater amount should be followed. Under that rule the conservator's decision would be predictable and automatic. Illinois does not follow this approach, however, preferring to examine not only the amounts at stake but other criteria as well:

> "It is impractical to delineate the factors which would apply in every case or, in fact, the relative weight to be given each in order to determine that which is to the best interest of the incompetent. Certainly the factor of value is important and in many cases would outweigh all others. Adequacy of funds for maintenance, care, medication, nursing, personal needs and comforts under a will as compared to those obtainable by taking against the will must be considered. If adequate and ample provision has been made it seems only equitable and just that a court not disregard the deceased spouse's desires in the disposition of his estate by diverting it to others because the survivor might well have considered this factor. Since the renunciation provision is for the benefit of the incompetent spouse, the interest of the heirs of the surviving incompetent spouse should not be considered." (*Kinnett v. Hood* (1962), 25 Ill. 2d 600, 603, 185 N.E.2d 888, 889.)

Thus, even when the forced share exceeds the amount provided by the will, the courts will not automatically allow renunciation if the will provides for the spouse adequately. And although renunciation disputes often pit the testator's legatees and devisees against the surviving spouse's heirs or prospective heirs (*e.g., Dalton; Rock Island Bank & Trust Co. v. First National Bank* (1962), 26 Ill. 2d 47, 185 N.E.2d 890), the court examines the financial needs of the surviving spouse only.

The conservator-bank's farm manager and assistant trust officer testified at the hearing on the petition to renounce. According to the farm manager both John Lynch and Lillian Lynch owned farms; his was worth slightly more than a million dollars and hers was worth slightly less than a million. Both were leased to David Missavage for $135 per tillable acre, a rate that the farm manager believed to be fair. The assistant trust officer kept records for the conservatorship. From July 19, 1979, to July 19, 1980, the conservator received income of about $82,000 and spent about $72,000. The income included farm rental and interest and dividends on investments as well as benefits following John Lynch's death in January 1980. The expenses were likely to recur and included $20,000 for the 24-hour care for Mrs. Lynch.

The respondents raise several arguments against the decision permitting the conservator to renounce the will. The respondents first argue that

Mrs. Lynch had a relatively short life expectancy and in fact died three months after the trial court's hearing and decision. During the hearing the conservator did not introduce any evidence of how many years a person of Mrs. Lynch's advanced age could expect to live, but during closing arguments referred to a life expectancy of 2.7 years. Mrs. Lynch's short life expectancy suggests that she had little need for her husband's property. The petitioner argues that the appeal must be decided on the basis of the facts at the time the trial court reached its decision. (*Logue v. Von Almen* (1941), 379 Ill. 208, 40 N.E.2d 73; *Bradley v. Gallagher* (1973), 14 Ill. App. 3d 652, 303 N.E.2d 251.) Although Mrs. Lynch lived for only a short time after the renunciation, we have no evidence concerning her expenses during that period—she may have incurred tremendous and uninsured hospital costs. Yet, life expectancy is relevant in determining a surviving spouse's financial needs.

Besides our lack of knowledge concerning her final expenses, another reason against considering Mrs. Lynch's death was implied by *Rock Island Bank & Trust*. In that case the husband predeceased the wife; after the wife's death, the executor of her estate petitioned to renounce the husband's will. The court held that the right to renounce is personal and dies with the surviving spouse. If the right to renounce is personal and dies with the spouse, then that decision should not be undone after the survivor's death. In effect, the respondents propose to reinstate renounced wills when the survivor's estate, excluding the forced share, is solvent at the time of death.

The respondents' next argument pertains to a holographic document dated December 12, 1979. It begins, "I want Mary Lemoine to have my farm and my home 1104 East Euclid Ave. at my death and after Lillian's death." This was signed by Lynch and two other persons. The rest of the page consists of notes: a telephone number and apparent suggestions for another will. This piece of paper was admitted to probate, but its legal status has not yet been decided. Under this document Mr. Lynch may have granted his wife a life estate in his farm. The respondents imply that a decision in this case should await a determination of that document's legal effect. Although at the hearing several attorneys referred to that document, no one sought a ruling on its effect or requested that the decision on the petition to renounce be delayed pending such a ruling. The trial judge did not rule on the question, saying that the only will before the court was that of July 28, 1979.

The respondents also argue that renunciation was ill-advised because the question of estate taxes was not developed at the hearing; increasing the size of Mrs. Lynch's estate may have unnecessarily increased the amount of taxes on her estate. Estate taxes do not accrue until death, however, and thus do not pertain to a survivor's financial needs, which end at death. The only parties concerned with the question are the

survivor's heirs and legatees, whose interests may not be considered in deciding whether to permit renunciation. *Dalton; Kinnett.*

Finally, the respondents attack the sufficiency of the evidence supporting the trial court's decision. They point to the farm manager's testimony that Mrs. Lynch owned a farm of her own, which was worth about a million dollars, and to the widow's award of $40,000, contending that the rents and the lump sum were sufficient to provide for the last three months of her life. Although the evidence shows that Mrs. Lynch's expenses exceeded her income, she had property of her own worth a substantial amount. The conservator thus failed to show that renouncing the will was necessary. We realize that the wills in *Dalton* and *Kinnett* provided the surviving spouses with much larger proportions of the decedent's estates than was bequeathed here, but the test is not purely what the testator could or should have left to the survivor, for *Kinnett* held that financial comparisons are only one element to consider in deciding whether to permit renunciation. The survivor's financial needs are not expressed solely by his expenses but must also embrace an assessment of his own property. If Mr. Lynch had owned both farms, the trial court's decision would be unassailable. But even though the rental income from her farm would have been inadequate to provide for her needs, the conservator could have mortgaged or sold the land. Renunciation defeats the testator's intent (*Dalton; Rock Island Bank & Trust*), and we see no reason in this case to stymie the testamentary plan.

Reversed.

GREEN and WEBBER, JJ., concur.