Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2017 09:09 AM CST

- 532 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

In re Guardianship and Conservatorship of
Loyola Jane Kaiser, an incapacitated
and protected person.
Heartland Trust Company, Conservator,
appellant, v. Paula Kaiser-Asmus
and Carol Harris, appellees.

___ N.W.2d ___

Filed January 13, 2017.    No. S-16-219.

1. **Guardians and Conservators: Appeal and Error.** An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
4. **Statutes: Legislature: Presumptions.** In enacting an amendatory statute, the Legislature is presumed to have known the preexisting law.
5. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
6. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

Appeal from the County Court for Fillmore County: Michael P. Burns, Judge. Affirmed.

Joseph H. Murray, P.C., L.L.O., of Germer, Murray & Johnson, for appellant.

Joseph N. Bixby and Paul N. Bixby, Senior Certified Law Student, of Bixby Law Office, for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

The appellant, Heartland Trust Company (Heartland), was appointed as the conservator for Loyola Jane Kaiser. After the death of Loyola's husband, Albert A. Kaiser, Heartland filed an application in the county court for Fillmore County seeking authority to file the elective share it stated was due to Loyola as Albert's surviving spouse. After a hearing, the county court denied Heartland's application. Heartland appeals. We affirm.

## STATEMENT OF FACTS

Albert and Loyola were married and had one child together, Paula Kaiser-Asmus (Paula). Loyola had two children from a previous marriage, James Votipka (James) and Carol Harris (Carol). The record does not specifically indicate when Albert and Loyola were married, but the county court noted in its order that "Paula was born in 1959, suggesting that the marriage between Albert and Loyola . . . spanned over many decades."

Albert and Loyola both executed wills on December 16, 2005, and these wills appear to mirror each other. The wills provided a life estate to the surviving spouse for certain property and devised all the residue of their property interests to the surviving spouse. They both also devised remainder interests in certain property to James, Carol, and Paula.

Loyola did not modify her 2005 will, but Albert executed a new will and a living trust on March 19, 2014. Albert's 2014

- 534 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

will named Loyola as his spouse, Paula as his child, and Carol as his spouse's child, and it stated that "[a]ll references to 'my children' in this Will are to these children." Albert's 2014 will further stated: "My spouse has a son, JAMES . . . ; that I have intentionally and with full knowledge chosen not to provide for him or his descendants." Albert's 2014 will distributed all of his property into his living trust.

Similar to his 2014 will, Albert's living trust identified Loyola as his spouse, Paula as his child, and Carol as his spouse's child, and it stated that "[a]ll references to 'my children' in this Agreement are to these children." The living trust specifically excluded James, stating that Albert had "intentionally and with full knowledge chosen not to provide for [James] or his descendants." "Article Nine" of Albert's living trust is titled "Distribution of My Trust Property," and it specifically designated Paula and Carol as the only two beneficiaries of the trust, with each receiving a 50-percent share of the trust upon Albert's death. Neither Loyola nor James were included as a beneficiary of Albert's trust.

On July 23, 2014, while Albert was still alive, the county court filed an order and letters in which it appointed Heartland as the conservator for Loyola.

Albert died in January 2015. On April 24, Heartland, as Loyola's conservator, filed an application in which it sought an order authorizing it to elect the statutory share due to Loyola as Albert's surviving spouse. Heartland alleged that pursuant to Neb. Rev. Stat. § 30-2313 (Reissue 2016), Loyola, as the surviving spouse, had a right of election to take an elective share in any fraction not in excess of one-half of Albert's augmented estate. In its application, Heartland additionally requested authorization to claim homestead, exempt property, and family allowances on behalf of Loyola.

A hearing was held at which Heartland offered and the county court received 12 exhibits. The president of Heartland, Lucas Swartzendruber, testified on behalf of Heartland. Swartzendruber testified that Loyola was approximately 88

- 535 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

years old at the time of the hearing. He stated that generally the life expectancy of an 88-year-old person is approximately 6 years, "but that could vary based on health." Swartzendruber noted that Loyola was in hospice care and that he had not been given any indication from Loyola's doctor as to how long the doctor expected Loyola to live.

Swartzendruber testified that he attempted to locate all of Loyola's assets, which are reflected in exhibit 8. The value of the assets listed in exhibit 8 is in excess of $1 million, and exhibit 8 states that Loyola's only liabilities are her current expenses. Swartzendruber also testified that he prepared an estimate of Loyola's anticipated income and expenses on an annual basis, which is reflected in exhibit 13. Loyola's estimated annual income totaled $90,597.77, which included Social Security payments, long-term care insurance, and rent from certain properties. Loyola's estimated annual expenses totaled $82,509.63. This estimate did not include conservator or attorney fees, which Swartzendruber noted would vary depending on pending legal actions.

Swartzendruber also stated at the hearing that Loyola had been named as a beneficiary of Albert's single premium annuity in the principal sum of $200,000, but that at some point, the beneficiary was changed and Loyola was no longer listed as a beneficiary. Swartzendruber further testified that Loyola had been listed as a beneficiary of Albert's life insurance policy in the amount of $25,000, but that she was no longer listed as a beneficiary at the time of Albert's death.

After the hearing but before the county court ruled on Heartland's application, Heartland, as Loyola's conservator, filed a petition for the elective share in Albert's separate probate matter, case No. PR-15-42. In the petition, Heartland recognized that the county court had not yet ruled on its application for authorization to file a petition for the elective share. However, Heartland stated that a petitioner is required to file a petition for elective share within 9 months of the decedent's death and Heartland was concerned that the right

- 536 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

to petition for elective share would be waived if it failed to file in a timely manner. In the separate probate matter, Paula subsequently filed a motion to dismiss Heartland's petition for elective share, because Heartland did not have authorization to file the petition.

On February 10, 2016, the county court filed its order in which it denied Heartland's application. In its decision, the county court considered Neb. Rev. Stat. § 30-2315 (Reissue 2016), which provides:

The right of election of the surviving spouse may be exercised only during his or her lifetime by him or her. In the case of a protected person, the right of election may be exercised only by order of the court in which protective proceedings as to his or her property are pending, after finding that exercise thereof in the fraction designated or proposed is in the best interests of the protected person during his or her probable life expectancy and of the children, family members, or other successors to the decedent or to the protected person, due regard being given by the court to the other assets and resources of the protected person, the extent and nature of any dependent, mutual, or otherwise related estate planning of the decedent and the protected person, the present and likely future financial impact upon the estate of the decedent, the protected person or the estate of the protected person, or such successors of any federal or state estate, excise, gift, income, inheritance, succession, or other tax consequent upon such exercise, and the existence or nonexistence of any other factors deemed by the court to be relevant to the exercise or nonexercise of the right of election.

The county court stated in its order:

In consideration of the factors set forth in . . . § 30-2315, it seems contrary to the estate planning done by the decedent (Albert) in 2014, as well as unnecessary when considering the current, plentiful financial

- 537 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

circumstances of the protected person (Loyola . . . ), to approve the request of the conservator for authorization to file an elective share, of any percentage, within [Albert's] estate . . . .

The county court stated that when Albert modified his estate in 2014 and excluded Loyola and James as beneficiaries of his living trust, he presumably took into consideration Loyola's assets, including income-generating resources that were accessible to Loyola. The county court noted that if Loyola's "current financial circumstances were not as stable and plentiful, then this Court would have little, if any, regard for the inferred primary intent of Albert's 2014 estate planning." However, the county court recognized that § 30-2315 provides that the court must give due regard "to the other assets and resources of the protected person, the extent and nature of any dependent, mutual, or otherwise related estate planning of the decedent and the protected person." The county court went on to state that "it is the application of this statutory provision which leads this Court to deny the request of the conservator to file for an elective share of [Albert's] estate."

In its February 10, 2016, order, the county court also granted Heartland's request for authority to claim homestead allowance, exempt property, and family allowance on behalf of Loyola. These determinations are not challenged on appeal.

Heartland appeals from the portion of the county court's order which denied the request to file an elective share.

## ASSIGNMENTS OF ERROR

Heartland claims that the county court erred because its decision denying the application of the conservator to file for an elective share "does not conform to the law, is not supported by competent evidence, and is arbitrary, capricious and unreasonable."

## STANDARDS OF REVIEW

[1,2] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in

the county court. *In re Conservatorship of Franke*, 292 Neb. 912, 875 N.W.2d 408 (2016). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

## ANALYSIS

Heartland claims that the county court erred when it denied its application for authority to file, on Loyola's behalf, for the elective share of Albert's augmented estate. Heartland argues that the county court's determination does not conform to the applicable law and is not supported by competent evidence. We disagree and affirm the order of the county court.

Section 30-2313 of the Nebraska Probate Code provides that after a married person dies, the person's surviving spouse has the right of election. Section 30-2313(a) states that "if a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share in any fraction not in excess of one-half of the augmented estate." The right of election allows a person who survives his or her spouse to elect to take a share of the deceased spouse's augmented estate, instead of taking what the surviving spouse would receive under the deceased spouse's will.

The Nebraska Probate Code limits the right of election for a surviving spouse who is a protected person. See § 30-2315. For purposes of the Nebraska Probate Code, a protected person is "a minor or other person for whom a conservator has been appointed or other protective order has been made." Neb. Rev. Stat. § 30-2601(3) (Reissue 2016). Loyola is a protected person for the purposes of our analysis.

- 539 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

The right to elect by a surviving spouse who is a protected person must be exercised in conformity with § 30-2315, which is the controlling statute applicable to this case. Section 30-2315 provides:

> In the case of a protected person, the right of election may be exercised only by order of the court in which protective proceedings as to his or her property are pending, after finding that exercise thereof in the fraction designated or proposed is in the best interests of the protected person during his or her probable life expectancy and of the children, family members, or other successors to the decedent or to the protected person, due regard being given by the court to the other assets and resources of the protected person, the extent and nature of any dependent, mutual, or otherwise related estate planning of the decedent and the protected person, the present and likely future financial impact upon the estate of the decedent, the protected person or the estate of the protected person, or such successors of any federal or state estate, excise, gift, income, inheritance, succession, or other tax consequent upon such exercise, and the existence or nonexistence of any other factors deemed by the court to be relevant to the exercise or nonexercise of the right of election.

Heartland claims that the county court erred in its application of § 30-2315 when it denied Heartland authorization to file for the elective share on Loyola's behalf. Heartland argues that the county court did not properly consider the factors set forth in § 30-2315, and it asserts that it would be in Loyola's best interests if she were allowed to file for the elective share. Heartland specifically contends that "[t]he unmistakable conclusion is that the best interests of [Loyola] can only be served by permitting her to make the full statutory election of fifty percent . . . of [Albert's] augmented estate." Brief for appellant at 11. Heartland relies on *Clarkson v. First Nat. Bank of Omaha*, 193 Neb. 201, 226 N.W.2d 334 (1975), to support

- 540 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

its contention that allowing Loyola to file for the elective share would be in her best interests, because filing for the elective share would provide her with the greatest monetary value. However, as explained below, Heartland's reliance on *Clarkson, supra*, is misplaced primarily because the statute on which that case was decided has been significantly revised and replaced by § 30-2315; the language of the controlling statute dictates different principles and, in this case, a different outcome.

The question before this court in *Clarkson, supra*, was whether it was in the best interests of an incompetent surviving spouse to take under her deceased husband's will or for the court to authorize her to take the elective share. The case was controlled by Neb. Rev. Stat. § 30-108(2) (Reissue 1964), the centerpiece of which provided that

> [t]he court . . . [after conducting a] hearing shall make such election [either to take as provided by the will or to take by inheritance and descent and distribute as provided by law] as it deems the best interests of such surviving husband or wife shall require, which election shall be entered upon the records of said court.

In *Clarkson*, the county court determined that the surviving spouse's best interests would not be served by filing for the elective share and that therefore, the surviving spouse should take under the will. On appeal, the district court disagreed and found that allowing the surviving spouse to file for the elective share would be of greater value to the surviving spouse. In a 4-to-3 decision, this court affirmed.

On appeal from the district court, this court in *Clarkson* was faced with the question of what factors were to be considered in determining the "best interests" of the incompetent spouse under § 30-108(2). In deciding what factors were to be considered under § 30-108(2), this court noted that there was a split among the jurisdictions regarding the approach to determine whether to authorize filing for the elective share. Essentially, the courts were split on the meaning of "best

- 541 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

interests." We noted that the minority of jurisdictions believed that the best interests of the surviving incompetent or protected spouse will be served by electing the method—either taking under the decedent spouse's will or filing for the elective share—which is most valuable to the surviving spouse. See *Clarkson, supra*. Following this approach usually means that the method which has the greater pecuniary value will be the method that is ordered. See, *id.*; *Spencer v. Williams*, 569 A.2d 1194 (D.C. App. 1990). This approach followed by the minority of jurisdictions is sometimes referred to as the "pecuniary approach." See Susan P. Barnabeo, Note, *The Incompetent Spouse's Election: A Pecuniary Approach*, 18 U. Mich. J.L. Reform 1061, 1070 (1985).

Contrary to the "pecuniary approach," the majority of jurisdictions are of the view that all the surrounding facts and circumstances should be taken into consideration by the court in order to determine whether to authorize the filing for the elective share. See, *Clarkson, supra*; *Kinnett v. Hood*, 25 Ill. 2d 600, 185 N.E.2d 888 (1962). Courts that follow the majority approach believe the minority approach is too narrow by focusing only on the pecuniary value. The majority approach values the flexibility afforded by considering all the surrounding facts and circumstances, such as the testator's intent and the choice the surviving spouse would have made had he or she been competent. See, *Spencer, supra*; Barnabeo, *supra*. In *Clarkson*, this court adopted the minority pecuniary approach.

The dissent in *Clarkson* found the pecuniary approach to be "too restrictive." *Clarkson v. First Nat. Bank of Omaha*, 193 Neb. 201, 209, 226 N.W.2d 334, 339 (1975) (McCown, J., dissenting; Newton and Clinton, JJ., join). The dissent stated that "[t]he rule adopted by the majority of courts offers a much broader and sounder basis for making the appropriate election on behalf of an incompetent surviving spouse. It likewise permits an equitable approach on an individual case basis." *Id*. at 210, 226 N.W.2d at 339. The dissent also noted that

- 542 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

§ 30-108 was to be replaced by a new statute, Neb. Rev. Stat. § 30-2315 (Cum. Supp. 1974), but the new statute was not yet in effect. The version of § 30-2315 to which the dissent made reference had been adopted as a part of the Nebraska Probate Code by 1974 Neb. Laws, L.B. 354; however, the 1974 version of § 30-2315 differs from the version of § 30-2315 that is currently in place. The 1974 version of § 30-2315 was patterned after a section of the Uniform Probate Code, then identified as § 2-203, and provided:

> The right of election of the surviving spouse may be exercised only during his lifetime by him. In the case of a protected person, the right of election may be exercised only by order of the court in which protective proceedings as to his property are pending, after finding that exercise is in the best interests of the protected person during his probable life expectancy.

After *Clarkson* was decided in 1975, the Legislature, by 1980 Neb. Laws, L.B. 694, amended the 1974 version of § 30-2315 that had been adopted as part of the Nebraska Probate Code. The 1980 version of § 30-2315 is the same as the version currently in place, and it provides that in the case of a protected person, a court may order that the right of election may be exercised

> after finding that exercise thereof in the fraction designated or proposed is in the best interests of the protected person during his or her probable life expectancy and of the children, family members, or other successors to the decedent or to the protected person, due regard being given by the court to the other assets and resources of the protected person, the extent and nature of any dependent, mutual, or otherwise related estate planning of the decedent and the protected person, the present and likely future financial impact upon the estate of the decedent, the protected person or the estate of the protected person, or such successors of any federal or state estate, excise, gift, income, inheritance, succession, or other

- 543 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

tax consequent upon such exercise, and the existence or nonexistence of any other factors deemed by the court to be relevant to the exercise or nonexercise of the right of election.

[4] In enacting an amendatory statute, the Legislature is presumed to have known the preexisting law. *Trumble v. Sarpy County Board*, 283 Neb. 486, 810 N.W.2d 732 (2012). By specifically amending § 30-2315 to include numerous factors that are to be considered by the court before ordering that a protected person may exercise the right of election, the Legislature obviously responded to this court's decision in *Clarkson v. First Nat. Bank of Omaha*, 193 Neb. 201, 226 N.W.2d 334 (1975), and rejected this court's adoption of the minority pecuniary approach. By the plain language of § 30-2315, the Legislature delineated a number of factors that are to be considered by the court. The Legislature thus has indicated its intention that this court use the majority approach and consider numerous facts and circumstances relevant to determine whether to authorize a protected person to file for the elective share. Our reading of the amendment to § 30-2315 is confirmed by the legislative history, wherein an attorney testifying in support of L.B. 694 stated that the purpose of the amendment to § 30-2315 was "to overcome the Supreme Court decision in [*Clarkson*]." Judiciary Committee Hearing, L.B. 694, 86th Leg., 1st Sess. 18 (Jan. 30, 1980).

We have not squarely addressed the issue of what factors are to be considered by a court in determining whether to authorize a protected person to file for the elective share, because this issue was decided in *Clarkson* under a different statute. The Legislature's 1980 amendment to § 30-2315 lists numerous considerations to be evaluated when deciding whether to authorize the filing for an elective share, and those considerations reflect the majority view. Those factors include other assets and resources of the protected person, related estate planning of the decedent, and tax consequences of the exercise or nonexercise of the right of election. See § 30-2315.

- 544 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

Thus, to the extent *Clarkson* adopted the minority "pecuniary approach," that holding has been superseded by statute, specifically § 30-2315.

[5,6] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016). It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *Id*. Based on the plain language of § 30-2315, we adopt the majority approach that the surrounding facts and circumstances should be taken into consideration by the court in order to determine whether to authorize the filing for the elective share in the case of a protected person.

Having determined that the majority approach applies, we turn to the facts of this case. Heartland argues that the county court failed to properly consider the factors set forth in § 30-2315. Heartland asserts that Loyola's assets and other resources do not provide her with the necessary income for the remainder of her life; Albert and Loyola had mutual estate planning in 2005, but Albert later modified his estate planning to exclude Loyola; and allowing Loyola to file for the elective share would not have a financial impact on Albert's estate.

After reviewing the record and the county court's order, we disagree with Heartland's assertions. The record indicates that the value of Loyola's assets at the time of the hearing exceeded $1 million, and that her only liabilities were her current expenses. The evidence shows that Loyola's anticipated annual income totaled $90,597.77 and that her estimated annual expenses totaled $82,509.63. This evidence regarding Loyola's assets and income was considered by the county court in making its determination. The county court also recognized that Albert modified his estate in 2014, at which time he executed a new will which distributed all of his property

- 545 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

into a living trust, from which he excluded Loyola as a beneficiary. The county court stated when Albert excluded Loyola as a beneficiary of his living trust, Albert presumably took into consideration Loyola's ongoing one-half interest in certain assets and income-generating resources that were accessible to Loyola.

In considering the evidence presented and the factors set forth in § 30-2315, the county court stated in its order:

> [I]t seems contrary to the estate planning done by the decedent (Albert) in 2014, as well as unnecessary when considering the current, plentiful financial circumstances of the protected person (Loyola . . . ), to approve the request of the conservator for authorization to file an elective share, of any percentage, within [Albert's] estate . . . .

The county court further stated that if Loyola's "current financial circumstances were not as stable and plentiful, then this Court would have little, if any, regard for the inferred primary intent of Albert's 2014 estate planning." However, the county court went on to state that

> as set forth in . . . § 30-2315, "due regard being given by the court to the other assets and resources of the protected person, the extent and nature of any dependent, mutual, or otherwise related estate planning of the decedent and the protected person," it is the application of this statutory provision which leads this Court to deny the request of the conservator to file for an elective share of [Albert's] estate.

(Emphasis in original.)

Based upon our review of the record, we cannot say that the county court's decision to deny Heartland's request to file for an elective share on behalf of Loyola was contrary to the law, specifically § 30-2315. The county court's decision is supported by the evidence set forth in the record regarding Loyola's assets and income and the estate planning completed by Albert in 2014, and we cannot say that the county

- 546 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF KAISER
Cite as 295 Neb. 532

court's decision was arbitrary, capricious, or unreasonable. Accordingly, we reject Heartland's assignment of error, and we affirm the order of the county court.

## CONCLUSION

The county court did not err when it denied Heartland's request for authorization to file, on Loyola's behalf, for the elective share of Albert's estate, and we therefore affirm the order of the county court.

Affirmed.