(No. 37095.—

Rock Island Bank & Trust Co., Admr., Appellant, *vs.* First National Bank of Rock Island, Exr., *et al.,* Appellees.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

EAGLE & EAGLE, of Rock Island, for appellant.

LLOYD A. SCHWIEBERT, of Moline, and STEPHEN C. MILLER, and MORAN, KLOCKAU, McCARTHY, SCHUBERT, HENSS & LOUSBERG, both of Rock Island, (DONALD A. HENSS and EDWARD J. TURNBAUGH, of counsel,) for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

A petition was brought by the administrator of the estate of Mabel Irene Anderson to determine whether the will of Edgar J. Anderson should be renounced. The probate court of Rock Island County denied the petition and this appeal followed. A freehold being involved, this court has jurisdiction on direct appeal.

The sole question presented by this appeal is whether the right to renounce a will is statutory and personal and dies with the surviving spouse. This is a case of first impression, although it is somewhat similar to *Kinnett* v. *Hood* 25 Ill.2d 600.

Edgar J. Anderson executed a will on December 28, 1959, in which he devised his home, household furnishings and automobile to Myrtle White, who was not a relative. The remainder of his estate was placed in trust, the income and, if necessary, the principal to be used for the support of his wife. Further provisions of his will provided that upon his wife's death, 50% of his estate was to go to his

nephew Kenneth Anderson, 22% to his wife's sister Vera Graves, and the balance to charity. On January 17, 1960, Mrs. Anderson was committed to the East Moline State Hospital for the Insane. Anderson died November 16, 1960, and the will was filed for probate on November 26, 1960. The Rock Island Bank & Trust Co. was appointed as conservator for Mrs. Anderson on December 7, 1960. The will was admitted to probate on December 22, 1960, and Mrs. Anderson died seventeen days later without any effort on her behalf to renounce her husband's will.

In holding that the right of renunciation did not survive to Mrs. Anderson's administrator in the absence of fraud, concealment, or conflicting interest, the probate judge stated:

"Actually, stripped of all the legal verbiage, this is just a contest between the heirs of the surviving spouse and the legatees and devisees of the Testator. I can see no equity in providing for the heirs against the wishes and the Will of the Testator. To me, there is a lot more justice and equity in upholding the spouse's Will than there is in allowing it to be renounced."

It is appellant's theory that neither the insane widow nor her estate should suffer by reason of the failure of anyone to take action on her behalf to renounce her deceased husband's will. It is the theory of appellees, Myrtle White and Kenneth Anderson, that the right to renounce the will is statutory and personal; that the right of an incompetent widow is no less and no greater than the right of a competent surviving spouse; and that there is no equity in providing for the heirs of a surviving spouse as against the wishes and the will of the testator.

After analyzing the decisions of the courts in other States, it appears the majority view is that the right to renounce a will is statutory and personal and dies with the surviving incompetent spouse, in the absence of fraud, concealment or conflicting interests of the conservator. In *Sippel* v. *Wolff*, 333 Ill. 284, there is dictum indicating that

renunciation of a will on behalf of an incompetent widow must be made during her lifetime. In that case the probate court refused to recognize the conservator's renunciation of the will of the insane widow's husband. The estate was settled without any appeal by the conservator, and the heirs of the insane widow, after her death, filed a bill to make the renunciation effective. This court on appeal held that the heirs of the insane widow cannot after her death file a bill to make the renunciation effective. In so holding this court said: "The income from the property was used for the comfort and support of the widow, as the will directed. There was no necessity for an increase of her income by renunciation of the will, but if the necessity existed it was not asserted and made effective during her life. The attempted renunciation now relied on has no authority of law to support it. Those seeking to renounce had nothing to renounce, for they took nothing under the will. Only those specified in the statute may exercise the statutory right, and as to incompetent persons the right is subject to the control of the probate court in the exercise of its limited equity powers in their behalf."

In the case of *Aagesen* v. *Munson,* 25 Ill. App. 2d 336, the court reached an opposite conclusion and held that a renunciation could be effected after the death of an insane widow. The appellant relies strongly on this case and the case of *Mead* v. *Phillips,* (D.C. cir.) 135 F.2d 819, cited therein. In a recent Illinois Bar Journal article it is suggested that the facts in the *Mead* case are so sufficiently different from the *Aagesen* case, that it can be questioned that that decision should have been relied upon as applicable precedent. (49 Illinois Bar Journal, 348, 349.) Likewise, James, in his work on Illinois Probate Law and Practice, questions whether the *Mead* case was an applicable precedent. (James, Illinois Probate Law and Practice, Vol. 1, Renunciation of Wills, sec. 16.4a, Pocket Part, page 86.) It does appear in the *Mead* case that the representative of the widow was ad-

versely interested as to the widow and the failure to bring the issue to the court's attention during the incompetent widow's lifetime created a special equitable situation. In support of the majority rule that the right to renounce is personal and dies with the surviving spouse, regardless of competency, is *Grammer v. Bourke*, 117 Ind. App. 151 where the court said: "Under the statute * * * in the case of an insane or aged and infirm widow under guardianship, the court may determine only whether it is *for the best interests* [court's emphasis] of such widow to take under the will or under the law, and it is difficult to see how the interests of a widow who has died leaving a solvent estate could be served by an election after her death. The right to elect is no part of the widow's estate; her kinsfolk have no claim upon the estate of her deceased husband, and the matter of enriching her estate for their benefit or for the benefit of those named in her will has no place in the consideration of the court."

There appears to be no logical reason why an incompetent spouse or her representative, if she be deceased, should have any larger right in reference to renunciation than a competent surviving spouse. In *Leonhart v. Reighard*, 409 Ill. 544, this court said: "That this act [Probate Act, sec. 17] should apply alike to those in sound mental and physical health and to those who may be minors or insane, or under any form of disability, should seem apparent."

Section 17 of the Illinois Probate Act is, in part, as follows: "In order to renounce a will the testator's surviving spouse shall file at the time and place provided for herein a written instrument signed by the surviving spouse and declaring the renunciation." (Ill. Rev. Stat. 1961, chap. 3, par. 17.) This section makes no provision for renunciation after the death of either a competent or incompetent widow and, therefore, indicates that the right of renunciation is purely personal. Had it been intended by the legislature that the right to renounce should continue after the death of the

widow, it would have been easy to have said so. In reading section 17 it indicates the intention of our law-makers to provide for the personal welfare of the widow during her lifetime. The needs for her personal comfort cease upon her death. Had the incompetent widow been living, our statute outlining the duties of a conservator require him to apply the estate for the comfort and support of the ward. (Ill. Rev. Stat. 1961, chap. 3, par. 122.) No mention is made of the interest of prospective heirs or others who may take after death of the ward. It is for this reason that it is frequently said that a conservator wears "blinders" and his only concern is the support of his ward and not those who come after. Nevertheless, the appellant asserts that the insane widow's conservator or relatives, or any persons interested in her husband's estate, could have initiated proceedings to determine whether it was to her best interest to renounce her husband's will. However, not every widow disregards her husband's wishes for the disposition of his property merely because she could get a greater part of his estate by doing so. She may be well provided for in the will regardless of mathematical calculations as to the effect of renouncing or not renouncing. Moreover, as was heretofore pointed out in discussion of the *Sippel* case, those seeking to renounce after the death of the insane widow had nothing to renounce for they took nothing under the will.

Any renunciation tends to defeat the intention of the testator, and it is our opinion that under the Illinois statute on renunciation the benefits to parties in interest other than the surviving spouse personally cannot be considered. Regardless of the duties of a conservator herein referred to, and regardless of the Illinois statute concerning renunciation, there appears to be little equity in providing for the heirs of a surviving spouse as against the wishes and the will of the testator.

We, therefore, adopt the majority rule that the right to renounce a will is personal and dies with the surviving

spouse regardless of her incompetency, in the absence of fraud, concealment, or conflicting interest of her representative. Accordingly, the judgment of the probate court of Rock Island County is affirmed.

*Judgment affirmed.*