(No. 46518.—

*In re* ESTATE OF EARL C. DALTON.—(Donald E. Dalton *et al.*, Appellants, v. Bessie Holt Shaffner *et al.*, Appellees.)

*Opinion filed March 24, 1975.—Rehearing denied May 29, 1975.*

Burrell Barash and Robert C. Stoerzbach, of Barash & Stoerzbach, and Richard J. Neagle, Jr., of Stuart, Neagle & West, all of Galesburg, for appellants.

Donald C. Woolsey, of Galesburg, and Davis, Morgan & Witherell, of Peoria (Robert H. Miller, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This is a contest between legatees and devisees under the will of Earl C. Dalton on the one hand, and the heirs of his surviving spouse, Rose Dalton, on the other. The circuit court found for the heirs of the surviving spouse. The Appellate Court, Third District, affirmed with one judge dissenting (16 Ill. App. 3d 186), and we allowed leave to appeal.

The testator made his will in September of 1967. He died March 5, 1971. At the time of his death, Rose Dalton, who had been his wife for 29 years, was 93 years old and

had been a patient in a nursing home for 9 years. During the last 4 of those years she had been bedridden and unable to walk due to a broken hip and severe arteriosclerosis. She and the testator were childless, but she had children by a prior marriage.

The will disposed of four farms which the testator owned, each by a devise for life to specifically named nieces and nephews and a sister with the remainder to their surviving child or children. Each of these devises was made "subject, however to the provisions in this my Will made for my wife, if she survives me." The will also provided that the executor should, during the life of the testator's wife, rent all the lands owned by the testator, "collect all the rents and make the necessary repairs, so as to keep the buildings on the lands in good and ordinary repair and condition, and pay all the necessary expenses for my said wife, including her hospital bills, nursing home expenses, doctors bills, and everything she may require for her care and comfort so long as she shall live, and such Executor shall accumulate such income, rents and profits up until the time of the death of my wife and then make distribution thereof to my then heirs at law, according to the Statute of Descent." The land in question was valued for estate tax purposes at $207,000. In addition, the surviving spouse received the home in Knoxville, valued at $13,000, which had been owned in joint tenancy.

The will was admitted to probate in the circuit court of Knox County on May 12, 1971. Ten days later, Bessie Holt Shaffner and Veda Holt Gray, daughters of Rose Dalton by a previous marriage, were, on their own petition filed in the same court, appointed conservators of the estate and person of Rose Dalton. Three days later, on May 25, 1971, they filed their petition for the entry of an order authorizing them to renounce the will of Earl C. Dalton. No notice of the filing of this petition was given to anyone. After describing the advanced age and poor health of the surviving spouse, the petition alleged:

> "Predictions on the continued life of the said Rose R. Dalton are extremely guarded; and her life span in normal health is actuarily inconsiderable."

The petition recited that "it is to the best interests of Rose Dalton, incompetent, and her estate that a general renunciation of testator's said Will be filed in her behalf with all possible speed."

The order authorizing the renunciation, which was entered on the same day, recited:

> "At 93 years of age, necessarily bedridden for the past four years with a broken hip and advanced arteriosclerosis, the life span of said Rose R. Dalton is fleeting; and her gift under testator's Will is inconsiderable to her and her estate, compared with her prospective share in testator's estate upon effective Renunciation of said Last Will and Testament."

The order authorizing the renunciation also stated:

> "Testator's plan, and direction to his Executor, to liquidate his entire estate is to the best interests of all the legatees, as well as the ward's personal estate; ***."

The testator's will contained no such plan or direction. The inaccurate statement in the order may have been due to the fact that the petition did not accurately state the provisions which the testator made for his widow in his will.

More significantly, for present purposes, both the petition and the order appear to have been based upon the benefit that would inure to the incompetent's estate from a renunciation. This is an improper consideration. In *Kinnett v. Hood* (1963), 25 Ill.2d 600, the various factors that might be considered by a court in determining whether to permit renunciation on behalf of an incompetent surviving spouse were discussed, and the court concluded:

> "*** Since the renunciation provision is for the benefit of the incompetent spouse, the interest of the heirs of the surviving incompetent spouse should not be considered." 25 Ill.2d at 603.

The following observation of this court with respect to the situation before it in the *Kinnett* case is equally applicable to the situation now before us:

"*** It is apparent that the right to renounce is one for the benefit of the surviving spouse, and yet the only benefit to be derived through renunciation in this case would inure to the heirs of the incompetent." 25 Ill.2d at 605.

And while the situation in *Rock Island Bank & Trust Co. v. First National Bank of Rock Island* (1962), 26 Ill.2d 47, was factually different from the present case, in that there renunciation was attempted on behalf of a deceased spouse, the following observation made by the court in that case is also pertinent:

"Any renunciation tends to defeat the intention of the testator, and it is our opinion that under the Illinois statute on renunciation the benefits to parties in interest other than the surviving spouse personally cannot be considered." 26 Ill.2d at 52.

As has been stated, the order authorizing renunciation of the will was entered without notice to anyone on May 25, 1971, and the renunciation was filed in the probate proceeding on the same day. Copies of the petition and order were thereafter mailed to the attorney for the executor. That attorney notified the appellants of the entry of the order in October of 1971. On October 30, 1971, they filed, in the probate proceeding in which the renunciation had been filed, their petition to strike it. The petition alleged that they had not learned of the *ex parte* order authorizing renunciation until October 19, 1971, that the testator had made generous and ample provision for his wife, and that the renunciation was not for the benefit of his wife, but of her heirs.

The conservators moved to dismiss this petition: (1) because the order against which the petition was directed

was entered in another cause (the conservatorship proceeding), and that order was not subject to collateral attack in another proceeding (the probate proceeding); and (2) there is no requirement that notice be given to any person of the renunciation petition and order.

In our opinion the circuit and appellate courts erred in sustaining the contentions advanced in the motion to dismiss. That the petition to vacate the renunciation was filed in the one proceeding rather than the other is immaterial. The order authorizing renunciation was of no consequence unless and until the renunciation was actually filed in the probate proceeding. (*See Davis v. Mather* (1923), 309 Ill. 284.) And while the order could have been challenged in the conservatorship proceeding, the appellate court erred in holding that the appellants were obligated to intervene in that proceeding in order to do so. In *Sweeting v. Campbell* (1954), 2 Ill.2d 491, 497-8, we held that the right to intervene in an action does not, in the absence of its exercise, subject those possessing it to the risk of being bound by the result unless they do so.

The appellate court also accepted the contention of the appellees that the appellants' petition could have spelled out the lack of an opportunity to dispute the propriety of the renunciation in jurisdictional terms, but in our opinion enough was said to show the absence of an adversary proceeding.

The majority of the appellate court recognized that there is no clear authority supporting the proposition that the conservator of an incompetent may be authorized to renounce a will in an *ex parte* proceeding. The closest thing to authority in support of that proposition is the language used in the opinion of this court in *In re Estate of Reighard* (1949), 402 Ill. 364. In the *Reighard* case, however, the initial *ex parte* application of the conservator for an order directing him to renounce the will was converted into an adversary proceeding by the requirement of the trial court that notice be given.

To read the *Reighard* case as authority for a completely *ex parte* renunciation by a conservator is to disregard the factual and legal situation with which the court was dealing in that case. The contention there advanced was that it was error to proceed unless *all* parties interested under the will were made parties to the determination of the propriety of the renunciation. It was that contention which was rejected. The court said:

"The appellants further contend that it was erroneous for the probate court to decide the matter on an *ex parte* application and that the proceeding should have been dismissed for want of necessary parties. We feel that the appellee here followed the usual procedure in probate courts by the conservator of an incompetent filing a petition requesting an order directing him to renounce the will. *From that point the case progressed as an adversary proceeding.* The title of the case indicates that certain of the beneficiaries under the trust created by the will, as well as the executor and trustee, appear as appellants. Testimony was introduced in their behalf and they were represented and heard at every stage of the proceeding.

\*\*\* We do not feel that the failure to make all persons interested under the will parties defendant to such a proceeding was error on the part of the probate court." (Emphasis supplied.) 402 Ill. at 369.

The decision in the *Reighard* case held only that it is not necessary to make all persons interested under the will parties defendant to a proceeding seeking renunciation of the will. It is not authority for the proposition that no interested persons need be made parties.

In their brief in this court the conservators suggest that equal protection will be violated if the spouse who is competent and survives is permitted to make an *ex parte*

renunciation while a renunciation made by conservators on behalf of an incompetent spouse must be followed by an adversary proceeding. In our opinion, however, there are differences between the two situations which justify the difference in treatment. Those differences need not be spelled out in detail. They were alluded to in the *Rock Island Bank & Trust Company* case in which the court observed: "However, not every widow disregards her husband's wishes for the disposition of his property merely because she could get a greater part of his estate by doing so. She may be well provided for in the will regardless of mathematical calculations as to the effect of renouncing or not renouncing." 26 Ill.2d at 52.

The judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Knox County.

*Reversed and remanded.*