415 S.E.2d 263

**In re Renunciation of WILL OF Fred B. SAYRE on Behalf of Audrey Landfried Sayre, an Incompetent.**

**No. 20586.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided Feb. 27, 1992.

Larry L. Skeen, Skeen & Skeen, Ripley, for the Committee Appointed on behalf of Audrey Sayre.

Robert W. Friend, Parkersburg, for Imogene Williams, Executrix.

WORKMAN, Justice:

The Circuit Court of Jackson County certified the following question to this Court:

Did the statutory right of Audrey Landfried Sayre, as a surviving spouse, who was an incompetent, to elect to accept or renounce the Will of the deceased spouse, Fred B. Sayre, Deceased, terminate upon the death of the said surviving spouse, Audrey Landfried Sayre, an incompetent, on her death on the 6th day of January, 1989?

Upon review of the arguments of the parties and the records submitted to this Court, we find that where an election to renounce has been made prior to the death of that renouncing spouse, the renunciation of a will may proceed to the circuit court confirmation stage regardless of the intervening death of such spouse.

### I.

Fred Brown Sayre, a former resident of Jackson County, West Virginia, died testate on December 2, 1986, and was survived by his wife, Audrey Landfried Sayre. Mrs. Sayre, having suffered a physically and mentally debilitating stroke in 1979, was officially declared incompetent on December 30, 1986. Petitioner Larry L. Skeen, Mrs. Sayre's nephew, was appointed as the committee for Mrs. Sayre. On January 20, 1987, Mr. Skeen, based upon his belief that a renunciation of Mr. Sayre's will would provide a significantly greater benefit to Mrs. Sayre, prepared and filed a written renunciation of the will.[1]

Written notice of the renunciation was provided to the executrix of the will, Imogene Williams, and the County Commission of Jackson County approved the renunciation. The executrix subsequently filed a civil action in the lower court seeking an interpretation of the will and questioning the legality of the will renunciation. By order dated December 4, 1989, Judge

---

1. In support of the renunciation, Mr. Skeen contends that the renunciation would be most beneficial to Mrs. Sayre considering the financial complications of the will and the provisions made in the will for Mrs. Sayre. Issues have also been raised regarding the possible conflict of interest created by the fact that the trustee named in the will to administer Mrs. Sayre's trust was also a residuary beneficiary under the will.

These matters are relevant to the circuit court's final determination regarding the propriety of permitting a renunciation on behalf of Mrs. Sayre. The question we must address at this juncture, however, is limited to whether this attempted renunciation may even proceed to that circuit court confirmation stage. Consequently, we leave the analysis of the provisions of the will and the alleged benefit of a renunciation to the sound discretion of the Circuit Court of Jackson County.

Charles E. McCarty of the Circuit Court of Jackson County ruled that although Mr. Skeen had the right to initiate a renunciation, it was void since it had not been confirmed by the circuit court. Upon appeal to this Court, we specifically recognized the intervening death of Mrs. Sayre and held that Mr. Skeen had the right to file the renunciation and seek ratification by the circuit court if the renunciation met guidelines set forth in our opinion. *Williams v. Skeen*, 184 W.Va. 509, 401 S.E.2d 442 (1990).

Upon remand to the lower court, however, the executrix raised the issue of the intervening death of Mrs. Sayre as a potential bar to further renunciation proceedings. On June 3, 1991, Mr. Skeen filed a motion with this Court seeking an order clarifying and/or expanding its previous ruling. By order of this Court dated June 6, 1991, Mr. Skeen's motion was refused, and we directed that "a renunciation may be made if the guidelines in the [previous] opinion are met." On July 11, 1991, Judge James O. Holliday, having been appointed Special Judge after Judge McCarty recused himself, certified to this Court the question of Mr. Skeen's right to pursue renunciation after Mrs. Sayre's death.

## II.

Although this Court has not previously had the opportunity to address this issue directly, we note that other jurisdictions have examined the issue and have, in most instances, concluded that the right to renounce a will is personal and dies with the surviving spouse. *Payne v. Newton*, 323 F.2d 621 (D.C.Cir.1963); *Rock Island Bank & Trust Co. v. First Nat'l Bank of Rock Island*, 26 Ill.2d 47, 185 N.E.2d 890 (1962); *Grammer v. Bourke*, 117 Ind.App. 151, 70 N.E.2d 198 (1946); *In re Estate of Messenger*, 208 Kan. 763, 494 P.2d 1107 (1972); *Domain v. Bosley*, 242 Md. 1, 217 A.2d 555 (1966); *Vanderlinde v. Bankers' Trust Co. of Muskegon*, 270 Mich. 599, 259 N.W. 337 (1935); *In re Estate of Davis*, 129 Vt. 162, 274 A.2d 491 (1971). Our inquiry, however, is not limited to that narrow scope. We must confront the issue of whether, once the initial election to renounce a will has been made, the death of a renouncing spouse terminates the procedural progression toward confirmation of the renunciation.

The executrix cites *Rock Island* for the proposition that the right to renounce a will is terminated upon the death of the surviving spouse even where proceedings had been begun prior to the death. 185 N.E.2d 890. In *Rock Island*, however, the spouse died before "any effort on her behalf to renounce her husband's will" was made. *Id.* 185 N.E.2d at 891. The *Rock Island* court held that the right to renounce a will is personal and dies with the surviving spouse regardless of her incompetency. *Id.* at 893. No mention is made, however, of a circumstance wherein a renunciation proceeding was initiated prior to the surviving spouse's death.

In *Grammer*, another case cited by the executrix in support of her position, the incompetent widow was alive when a petition for instructions was filed regarding the propriety of a will renunciation. 70 N.E.2d 198. The petition requested "instructions as to whether or not he [the guardian], ... should accept the provisions of the will for said widow, or elect to take under the law." *Id.* The widow died, however, before information was received regarding that decision and before an actual election to renounce was made. *Id.* at 198-99. Again, *Grammer* did not deal directly with the issue which has been presented to this Court.

■ We recognize and adopt the majority rule that the right to renounce a will is personal and dies with a surviving spouse regardless of that spouse's incompetency. Thus, where an election to renounce has not been made prior to death, such renunciation is no longer permitted. In this case, however, we must proceed to an additional inquiry and address the issue of an election proceeding which was commenced but not completed during the spouse's lifetime. The actual election to renounce in the present case had been completed prior to Mrs. Sayre's death.

In *In re Harris' Will*, 35 Misc.2d 443, 229 N.Y.S.2d 997 (1962), the New York court articulated its reasoning for permitting the confirmation of a renunciation after the spouse's death by recognizing a distinction between substantive and procedural matters. A spouse's decision to accept or renounce his decedent's will was considered substantive in nature. Consequently, the right to make the initial renunciation did terminate upon the death of the spouse. However, the failure to obtain an order authorizing the election was considered "a procedural error". 229 N.Y.S.2d at 1000. Thus, where the widow's committee had presented a notice of election to renounce prior to the widow's death, but failed to obtain an authorization order prior to the death, it was determined that the court could make a *nunc pro tunc* order authorizing the election. *Id.* The court held that failure to obtain the order prior to the widow's death was not fatal to the renunciation attempt, was simply a procedural error, and was a "mere irregularity." *Id.*

Similarly, in *Spencer v. Williams*, 569 A.2d 1194 (D.C.App.1990), the court determined that an incompetent widow's intervening death did not terminate her conservator's right to continue ratification proceedings where the initial election to renunciate had been made while the widow was still living. A renunciation on behalf of the widow had been filed on October 14, 1986; the widow then died on April 24, 1987, and the renunciation was ratified by the trial court on June 3, 1987. *Id.* at 1195. The appellate court affirmed the trial court's determination, explaining the following:

We note finally that the trial court was correct in concluding that Mrs. Henderson's death on April 24, 1987, while the motion for ratification of the election was under advisement, has no effect on the outcome of this case. It is true that, absent exceptional circumstances, death terminates the right of a surviving spouse, whether competent or incompetent, to renounce the will. In the present case, however, Mrs. Henderson, acting through her conservator, filed her election to renounce the will while she was still alive. That Mrs. Henderson did not live to receive her share does not alter our analysis.

*Spencer,* 569 A.2d at 1196–97 (footnote and citations omitted).

■ We adopt the above reasoning and conclude that where a spouse makes an election to renounce a will prior to such spouse's death, the actual election has already been accomplished. What remains is simply a procedural formality and a confirmation of that initial election. Thus, where an election to renounce has been made prior to the death of the renouncing spouse, the renunciation may proceed to the confirmation stage regardless of the intervening death of such spouse. Having made an election prior to death should not necessarily guarantee circuit court approval, but it should guarantee the completion of all procedural steps toward the circuit court confirmation proceeding.

■ Based upon the foregoing, we hold that although Audrey Sayre's right to elect to accept or renounce her husband's will did terminate upon her death, the election to renounce the will had been made prior to Mrs. Sayre's death. Consequently, the procedural stages of the will renunciation, including the certification by the circuit court, may be completed subsequent to Mrs. Sayre's death. Because the actual election to renounce had been made prior to death, the intervening death does not terminate the progression toward circuit court confirmation of the renunciation. Thus, Mr. Skeen may request the circuit court's confirmation of the renunciation, and the circuit court may proceed to evaluate the requested renunciation. Having answered the certified question, we order this case dismissed from our docket.

Certified question answered and dismissed.