# Illinois Official Reports

## Appellate Court

---

**In re Estate of Mondfrans, 2014 IL App (2d) 130205**

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE of JEAN MONDFRANS (Conard Mondfrans, as Administrator of the Estate of Harry Mondfrans, Petitioner-Appellant, v. John Collins, as Executor of the Estate of Jean Mondfrans, Respondent-Appellee). |
| District & No. | Second District<br>Docket No. 2-13-0205 |
| Filed | March 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In estate proceedings where a petition to renounce decedent's will was filed on behalf of decedent's spouse, an incompetent who was living in an assisted living facility, the trial court's dismissal of the petition was upheld on appeal, notwithstanding the fact that the spouse was not sent notice of the probate of his wife's will, since decedent's spouse died less than two months after the will was admitted to probate, no one notified the executor of decedent's estate that a guardian had been appointed for her spouse in a separate proceeding, under the circumstances, there was no one decedent could notify of the probate proceedings, there was no indication of any concealment of the probate proceedings, and even if decedent's will had been renounced in a timely manner, the right to renounce, which is intended to provide for a surviving spouse during his or her lifetime, ceased upon the death of decedent's spouse. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-P-634; the Hon. David R. Akemann, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | James C. James III, of Alschuler, Simantz & Hem, LLC, of Aurora, for appellant. |
| | Richard D. Skelton, of R.D. Skelton Ltd., of Geneva, for appellee. |
| Panel | PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion. |
| | Justices McLaren and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1     Jean Mondfrans passed away, leaving a will that did not include any provisions for her husband, Harry Mondfrans, who was suffering from dementia and residing in an assisted living facility. When Jean's will was admitted to probate, no notice was sent to Harry, and he died less than two months later.

¶ 2     Conard Mondfrans, Harry's son, served as his conservator in the probate proceedings on Jean's will and as the administrator of his estate. Conard petitioned to renounce Jean's will under section 2-8 of the Probate Act of 1975 (755 ILCS 5/2-8 (West 2012)). John Collins, the executor of Jean's estate, objected on the ground that the petition was filed after Harry's death and more than seven months after the admission of Jean's will to probate. The trial court sustained the objection and dismissed the petition with prejudice as untimely.

¶ 3     Conard appeals, arguing that the seven-month limitations period for petitioning to renounce a will should not apply and that Harry's right to renounce Jean's will should survive his death, because Jean's representatives engaged in "active concealment" of the probate proceedings. We affirm. We conclude that, under the undisputed facts of this case, (1) there was no concealment of the proceedings and (2) Harry's statutory right to renounce Jean's will abated upon his death, because the right is purely personal and not intended to benefit Harry's heirs contrary to Jean's intent. Even if Harry or Conard had petitioned to renounce the will while he was alive, his right to renounce would have abated upon his death, because there was no concealment.

## I. BACKGROUND

The parties do not dispute the salient facts. Jean and Harry were married for 44 years, and each had three adult children from prior marriages. Jean's children, Steven, Randall, and Thomas, resided in the western suburbs of Chicago. Harry's children, Conard, Jan, and Scott, resided in California.

In November 2006, Harry was moved to an assisted living facility because he suffered from worsening dementia and needed around-the-clock supervision. Jean visited Harry daily and managed his health care and living arrangements. On August 22, 2008, Jean executed a will that did not include any provisions for Harry. The will stated that Harry was disabled but with sufficient personal assets to maintain his care.

Jean died unexpectedly on September 28, 2011, at the age of 76. Harry was almost 91 years old and suffering from Lewy body dementia, diabetes, atrial fibrillation, and osteoarthritis. Harry was mentally incompetent and unable to care for himself. After Jean died, Harry's children considered moving him to California but decided that his assisted living facility was providing good care and that Harry should remain there.

On October 30, 2011, Randall, Jean's son, contacted Jan, Harry's daughter, by email and told her that probate proceedings would be opened for Jean's estate. Randall suggested that Jan arrange for the appointment of a guardian for Harry so proper notice could be delivered to someone acting on Harry's behalf. Jan replied to the email, writing that she would discuss the matter with her siblings.

On November 20, 2011, James Cooke, the attorney for Jean's estate, contacted Conard and told him that he was preparing to open a probate estate for Jean. Cooke also told Conard that steps should be taken to institute guardianship proceedings for Harry because Jean was no longer alive to manage his affairs and Harry needed someone to act on his behalf both personally and financially.

On December 2, 2011, in a separate proceeding, the trial court appointed a guardian *ad litem* for Harry. No notice of this appointment was provided to any of Jean's representatives.

On December 14, 2011, Collins filed a petition for probate of will and letters testamentary, nominating himself as the executor of Jean's estate. Collins listed as heirs Jean's three sons, a daughter-in-law, and five grandchildren. Harry was omitted from the petition because he was incapacitated and could not receive notice. Neither Harry nor any of his children was served notice of the probate proceedings.

On December 15, 2011, the trial court admitted Jean's will to probate and appointed Collins executor of Jean's estate. Harry was identified in the affidavit of heirship as the surviving spouse.

In Harry's guardianship proceeding, the guardian *ad litem* indicated in his report that, on December 19, 2011, he was informed of the probate proceedings. Additional notice of the opening of Jean's probate estate was provided by publication in a newspaper of general circulation in Kane County on December 29, 2011, and for three weeks thereafter.

On January 26, 2012, Conard was appointed Harry's guardian in the probate proceedings. Less than two weeks later, on February 8, 2012, Harry died. Fifty-six days had elapsed since Jean's will was admitted to probate.

¶ 15 On March 22, 2012, Conard was appointed the administrator of Harry's estate, and he acted as his conservator in the probate proceedings on Jean's will. On August 16, 2012, Conard petitioned for renunciation of Jean's will under section 2-8 of the Probate Act. Section 2-8(a) provides in relevant part that "[i]f a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: • of the entire estate if the testator leaves a descendant." 755 ILCS 5/2-8(a) (West 2012).

¶ 16 Conard also petitioned for a surviving spouse's award from Jean's estate (see 755 ILCS 5/15-1(a) (West 2012)). The parties settled the surviving spouse claim, which is not at issue in this appeal.

¶ 17 On October 3, 2012, Collins filed an objection to the petition for renunciation of Jean's will, arguing that the petition was improper under section 2-8(b) because it was filed after Harry's death and more than seven months after Jean's will was admitted to probate. Section 2-8(b) provides as follows:

> "In order to renounce a will, the testator's surviving spouse must file in the court in which the will was admitted to probate a written instrument *signed by the surviving spouse* and declaring the renunciation. The time of filing the instrument is: (1) *within 7 months after the admission of the will to probate* or (2) within such further time as may be allowed by the court if, within 7 months after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate. The filing of the instrument is a complete bar to any claim of the surviving spouse under the will." (Emphases added.) 755 ILCS 5/2-8(b) (West 2012).

¶ 18 On January 17, 2013, the trial court sustained the objection and dismissed with prejudice the petition to renounce Jean's will. The court rendered its decision based on the arguments of counsel because neither side sought an evidentiary hearing. This timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20 Section 2-8 of the Probate Act prescribes the procedure for a surviving spouse to renounce a will. However, section 2-8 does not specify a standard of review when the trial court denies such a renunciation.

In this case, Conard argues–and Collins does not dispute–that the trial court's dismissal with prejudice of the renunciation petition is like the dismissal of a civil complaint under section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). The court did not conduct an evidentiary hearing but rather sustained the objection based on certain undisputed facts. The parties essentially agree that the dismissal is subject to the *de novo* standard of review. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009) (a motion to dismiss under section 2-619(a) admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action). Conard argues that (1) the renunciation petition was timely and (2) Harry's right to renounce the will survived his death.

¶ 21                              A. Alleged Concealment of Probate Proceedings

¶ 22        Conard admits that the petition to renounce Jean's will was filed more than seven months after the will was admitted to probate. However, Conard argues that Collins should be estopped from asserting section 2-8(b)'s seven-month limitations period, because "the failure to provide any notice to Harry of the probate of Jean's new will effectively tolled the seven-month filing requirement." Conard asserts, and Collins does not dispute, that Collins failed to send Conard or Harry any documentation of the admission to probate of Jean's will or any indication that Jean's will did not contain any provisions for Harry.

¶ 23        Conard argues that, after Collins omitted Harry from the petition to admit the will to probate, Collins violated section 6-11(a) of the Probate Act by failing to file an amended petition and mail the amended petition to Harry. See 755 ILCS 5/6-11(a) (West 2012) ("If it appears after entry of an order admitting or denying admission of a will to probate that an heir or legatee was omitted from the petition to admit the will to probate or, if included in the petition, that notice to him was not mailed or published as provided in Section 6-10 or 6-20, whichever is applicable, and that no waiver of notice was filed by the omitted or unnotified heir or legatee, an amended petition shall be filed under Section 6-2 or 6-20 which shall include the omitted or unnotified heir or legatee."). Conard contends that, if Harry had been sent notice, he or his representative would have had time to act upon the knowledge that Jean executed a new will that disinherited him.

¶ 24        Conard also argues that Collins violated the Probate Act's provisions regarding the appointment of a fiduciary for Harry to represent him in the probate proceedings. 755 ILCS 5/6-2 (West 2012) (unless supervised administration is requested, a petition to admit a will to probate must state the name and address of any personal fiduciary); see also 755 ILCS 5/6-12, 28-3 (West 2012) (appointment of guardian *ad litem* and protection of persons under disability during independent administration). Conard asserts that, because Harry was not properly identified as an heir, these protections were not invoked for Harry's benefit and therefore principles of equitable tolling should allow the petition to renounce to be filed more than seven months after Jean's will was admitted to probate. We disagree.

¶ 25        "Generally, the doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where 'because of disability, irremediable lack of information, or other circumstances beyond his control,' the plaintiff cannot reasonably be expected to file suit on time." *Williams v. Board of Review*, 241 Ill. 2d 352, 360 (2011) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). Equitable tolling requires a showing of due diligence on the part of the plaintiff. *Williams*, 241 Ill. 2d at 372. "Due diligence is a 'fact-specific inquiry, guided by reference to the hypothetical reasonable person[ ]' ***." *Williams*, 241 Ill. 2d at 372 (quoting *Former Employees of Siemens Information Communication Networks, Inc. v. Herman*, 24 Ct. Int'l Trade 1201, 1208 (2000)). However, "where the evidence leaves no room for a reasonable difference of opinion, the court may properly resolve such issues as a matter of law." *Mackereth v. G.D. Searle & Co.*, 285 Ill. App. 3d 1070, 1077 (1996).

¶ 26        Under the undisputed facts of this case, we conclude that Harry's representatives did not exercise due diligence in preserving Harry's right to renounce Jean's will. Conard admits that the affidavit of heirship identifies Harry as the surviving spouse. Moreover, Conard does not dispute that Cooke and Randall informed Harry's family of the probate proceedings before

- 5 -

Harry died. After Jean died on September 28, 2011, Randall informed Jan on October 30, 2011, that probate proceedings would be opened for Jean's estate. Randall specifically mentioned the need to appoint a guardian for Harry so proper notice could be served. Then, on November 20, 2011, that information was reiterated when Cooke notified Conard that he was preparing to initiate probate proceedings and that a guardian should be appointed for Harry.

¶ 27    On December 2, 2011, two weeks before Jean's will was admitted to probate, the trial court appointed a guardian *ad litem* for Harry. However, the guardianship case was separate from the probate proceedings, and no notice of the appointment was delivered to Collins. Regardless, the guardian *ad litem* and Conard had time to preserve Harry's right to renounce Jean's will while he was alive.

¶ 28    We reject Conard's claim that the absence of notice under section 6-11 of the Probate Act amounts to concealment. When Jean's will was admitted to probate, Harry was incompetent, he did not have a guardian in those proceedings, and no one notified Collins that a guardian *ad litem* had been appointed for Harry in a separate proceeding. Thus, there was no one for Collins to notify under section 6-11.

¶ 29                              B. The Right to Renounce

¶ 30    In a related argument, Conard contends that Harry's right to renounce the will under section 2-8 survived his death. *Rock Island Bank & Trust Co. v. First National Bank of Rock Island*, 26 Ill. 2d 47 (1962), is the seminal case interpreting section 2-8(b). In *Rock Island*, a husband died, and the administrator of an incompetent wife attempted to renounce the husband's will after the wife died. *Rock Island*, 26 Ill. 2d at 48.

¶ 31    The *Rock Island* court noted the majority rule that the right to renounce is statutory and personal and dies with the surviving spouse, regardless of competency. *Rock Island*, 26 Ill. 2d at 51. The court stated that there was no logical reason for an incompetent spouse or the spouse's representative to have any greater renunciation right than a competent spouse. The court emphasized that the statute does not allow renunciation after the death of either a competent or an incompetent spouse, which indicates that the right to renounce is purely personal. If the legislature had so intended, it easily could have provided expressly that the right to renounce should continue after the death of the surviving spouse. The court concluded that the legislature intended to provide for the personal welfare of the surviving spouse during his or her lifetime and that the needs for the surviving spouse's comfort cease upon his or her death. *Rock Island*, 26 Ill. 2d at 51-52.

¶ 32    The court additionally remarked that the statute did not mention the interest of prospective heirs or others who may take after the death of the surviving spouse. *Rock Island*, 26 Ill. 2d at 52. "Any renunciation tends to defeat the intention of the testator, and it is our opinion that under the Illinois statute on renunciation the benefits to parties in interest other than the surviving spouse personally cannot be considered." *Rock Island*, 26 Ill. 2d at 52. The court determined that it could discern little equity in providing for the heirs of a surviving spouse in opposition to the wishes and the will of the testator. *Rock Island*, 26 Ill. 2d at 52; see also *Kinnett v. Hood*, 25 Ill. 2d 600, 603 (1962) (the interest of the heirs of the surviving incompetent spouse should not be considered, because the renunciation statute is for the benefit of the incompetent spouse).

¶ 33    Our supreme court adopted "the majority rule that the right to renounce a will is personal and dies with the surviving spouse regardless of her incompetency, in the absence of fraud, concealment, or conflicting interest of her representative." *Rock Island*, 26 Ill. 2d at 52-53; see also *Andrykowski v. Theis*, 40 Ill. App. 2d 182, 193 (1963) (the question of fraud, concealment, or conflicting interest can be raised only in cases where an incompetent attempts to assert the right of renunciation). Accordingly, the *Rock Island* court upheld the denial of the petition to renounce the will.

¶ 34    We followed *Rock Island* in deciding *In re Estate of Thompson*, 131 Ill. App. 3d 544 (1985). In *Thompson*, a husband and wife were involved in a divorce proceeding. The husband executed his last will and testament, which did not include any provisions for his wife. *Thompson*, 131 Ill. App. 3d at 544-45. About a month later, both died when the husband allegedly shot his wife and then shot himself. The wife outlived her husband by 45 minutes.

¶ 35    Within seven months of the admission of the husband's will to probate, the administrator of the wife's estate petitioned to renounce the husband's will. The trial court denied the petition.

¶ 36    On appeal, the administrator argued that the wife's estate had the right to renounce because the husband took her life, thereby preventing her from renouncing the will during her lifetime. *Thompson*, 131 Ill. App. 3d at 546-47. The administrator argued that public policy demands that a surviving spouse, such as the wife, not be precluded from renouncing a will after her death where she is murdered by the testator spouse. This court concluded that the rationale of *Rock Island* barred renunciation, because the wife's heirs were the only persons who would benefit from allowing renunciation of the husband's will. *Thompson*, 131 Ill. App. 3d at 547.

¶ 37    We further noted that the record on appeal contained no facts admitted into evidence that substantiated the claims of either murder or intentional and unjustifiable death. The executor of the husband's estate denied the allegations and no proof on the issue was adduced at the hearing. Noting that the wife's administrator, as the appellant, bore the responsibility to see that the record on appeal was complete, we declined to speculate about what transpired to cause the husband and wife to be found dead and dying from gunshot wounds. *Thompson*, 131 Ill. App. 3d at 547.

¶ 38    Conard argues that Harry's right to renounce the will under section 2-8 survived his death, because "the failure to provide any notice to Harry fits the *Rock Island* exception of concealment so as to allow the renunciation right to survive the death of the disabled surviving spouse." In sustaining the objection to the renunciation petition, the trial court concluded that *Rock Island* and *Thompson* compelled dismissal with prejudice and that the exceptions set forth in *Andrykowski* do not apply. We agree with the trial court.

¶ 39    In *Thompson* there were no facts admitted into evidence that substantiated the claims of either murder or intentional and unjustifiable death. Similarly, as noted, the undisputed facts in this case do not establish any concealment of the probate proceedings. As discussed, the affidavit of heirship identifies Harry as the surviving spouse, and Randall and Cooke informed Jan and Conard, respectively, that probate proceedings would be opened for Jean's estate and that Harry needed a legal guardian for proper service.

¶ 40    The legislature intended to provide for the personal welfare of the surviving spouse during that person's lifetime, and the needs for Harry's comfort ceased upon his death. See *Rock Island*, 26 Ill. 2d at 51-52. In the absence of concealment, the right to renounce was purely

personal to Harry and died with him, because section 2-8 does not allow renunciation after the death of either a competent or an incompetent spouse. See *Rock Island*, 26 Ill. 2d at 51-52.

¶ 41 On the undisputed facts, we conclude that the trial court did not err in dismissing with prejudice Conard's petition to renounce Jean's will. Our conclusion obviates the need to address Collins's remaining argument that, even if the petition had been timely, renunciation would be inappropriate because Harry had sufficient personal funds to provide for his personal welfare during the short period he outlived Jean.

¶ 42                                III. CONCLUSION

¶ 43 We hold that the trial court properly dismissed with prejudice the petition to renounce Jean's will, on the grounds that the petition was filed after Harry's death and more than seven months after the will was admitted to probate. For the reasons stated, we affirm the judgment of the circuit court of Kane County dismissing the petition to renounce Jean's will.

¶ 44 Affirmed.