2017 IL App (2d) 160889
No. 2-16-0889
Opinion filed June 28, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF MARJORIE FRIEDMAN SCHERR, Deceased | ) ) ) | Appeal from the Circuit Court of Lake County. |
| (Lisa K. Scherr, as Trustee of the George H. Scherr Trust Dated March 14, 2002, Petitioner-Appellant, v. Julie L. Ehrlich, Joel L. Friedman, and Jeremy L. Friedman, as Heirs and Legatees of the Estate of Marjorie Friedman Scherr, Deceased, Respondents-Appellees). | ) ) ) ) ) ) ) ) ) | No. 16-P-3 Honorable Donna-Jo R. Vorderstrasse, Judge, Presiding. |

PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1                                    I. INTRODUCTION

¶ 2     Petitioner, Lisa K. Scherr, as Trustee of the George H. Scherr Trust Dated March 14, 2002, appeals an order of the circuit court of Lake County. That order sustained an objection made by respondents, Julie L. Ehrlich, Joel L. Friedman, and Jeremy L. Friedman, to the renunciation of the will of Marjorie Friedman Scherr by her spouse, George H. Scherr (both are deceased). For the reasons that follow, we reverse and remand.

¶ 3                                    II. BACKGROUND

¶ 4     On September 5, 2015, Marjorie died. George filed a petition for probate and letters on January 5, 2016. The petition stated that Marjorie left a will dated August 14, 1970, which

George believed to be her valid last will (the will was executed while Marjorie was married to her first husband, and respondents, Marjorie's children, were the sole surviving legatees under this will). He further averred that it had not been previously admitted to probate. The individuals listed in the will as executor and successor-executor had predeceased Marjorie, so George asked that petitioner, his daughter, be named executor. She was so appointed. The will made no provision for George. Respondents filed their appearances in February 2016.

¶ 5     On April 1, 2016, George filed a renunciation of the will. It stated, "The undersigned, George Scherr, surviving spouse of the above named decedent hereby renounces the will of the decedent which was admitted to probate in this Court on January 14, 2016." George died on May 23, 2016. A copy of the renunciation was sent to respondents' counsel on May 24, 2016. On June 23, 2016, respondents filed an objection to the renunciation. In it, they asserted the following: (1) respondents were not given notice of the filing of the renunciation, and it was only after George died that their attorney was provided with a copy of the renunciation; (2) the legislative purpose behind allowing a renunciation is to provide for a surviving spouse during that person's lifetime; and (3) this court recently stated that a renunciation abates upon the death of a surviving spouse, even if it was filed before that spouse's death (see *In re Estate of Mondfrans*, 2014 IL App (2d) 130205, ¶ 3). Subsequently, respondents also asserted that petitioner lacked standing to assert George's renunciation, as that right was personal to him. Petitioner responded by offering an assignment to the trust, executed by George, of his interest in Marjorie's estate.

¶ 6     Following a hearing, the trial court sustained respondents' objection to the renunciation. It first addressed petitioner's standing. Respondents complained that the assignment was not verified. Petitioner testified as to George's execution of the assignment and his capacity to do

so. The trial court then found that the assignment was valid and transferred to the trust the "ability to enforce" the renunciation. The court then turned to the renunciation.

¶ 7    Respondents argued that George's renunciation abated at his death. Respondents acknowledged that no Illinois case holds that a renunciation abates at death. However, they pointed to *dicta* in *Mondfrans*, *id.*, that did so state. Further, respondents pointed to Illinois public policy, which indicates that a renunciation's sole purpose is to provide for a surviving spouse after the death of the decedent spouse. Petitioner responded that George had complied with the "very simple requirements of the statute" and that *Mondfrans* was factually inapposite. According to petitioner, since George complied with the statute in its entirety, his subsequent death had no bearing on the validity of the renunciation.

¶ 8    The trial court began its ruling by acknowledging that there was "no case in Illinois that [had] exactly these facts." The trial court noted the Illinois public policy that a renunciation is for the benefit of the surviving spouse and that the interests of any heirs of that spouse are irrelevant. The trial court rejected petitioner's position that filing is sufficient to complete the renunciation. It explained that it hears "objections to renunciations all the time," based on issues like premarital agreements or divorce decrees. It then reasoned, "So renunciation still has to be approved by the court." The trial court acknowledged that its position "raises the issue [of] how long does one have to survive for a renunciation to take effect." However, it emphasized that this was not at issue here. Rather, in this case, the renunciation had not come before the trial court and "was not approved yet." Further, George died "shortly after the renunciation" and it would not benefit him. Accordingly, the trial court concluded that allowing the renunciation would violate public policy and it sustained the objection. This appeal followed.

¶ 9                                III. ANALYSIS

¶ 10    On appeal, petitioner argues that the trial court erred in sustaining respondents' objection. She primarily relies on the plain language of section 2-8 of the Probate Act of 1975 (Act) (755 ILCS 5/2-8 (West 2016)).  Respondents raise three arguments in opposition.  First, they contend that the policy underlying the statute indicates that the right to renounce abates on the death of the renouncing spouse.  Second, they contend that any action that is a creation of statute abates on the death of the party advancing the cause of action, absent a statutory provision providing otherwise.  Third, they contend that petitioner lacks standing.

¶ 11                              A. Section 2-8 of the Act

¶ 12    Initially, we note that we are confronted with the task of ascertaining the meaning of a statute.  The construction and application of a statute are matters we review *de novo*.  *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13.  Thus, our foremost guide to resolving this appeal is the language of the statute itself.  *In re Objections to Tax Levies of Freeport School District No. 145*, 372 Ill. App. 3d 562, 579 (2007).  Where the language of a statute is plain and unambiguous, we must apply it without resorting to external aids of construction.  *Moore v. Green*, 219 Ill. 2d 470, 479 (2006).  We may not depart from the plain language of a statute and read into it exceptions, limitations, or conditions that conflict with the legislature's clearly expressed intent.  *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996).

¶ 13    Here, the statute in question reads, in pertinent part, as follows:

"*In order to renounce a will, the testator's surviving spouse must file in the court in which the will was admitted to probate a written instrument signed by the surviving spouse and declaring the renunciation.* The time of filing the instrument is: (1) within 7 months after the admission of the will to probate or (2) within such further time as may be allowed by the court if, within 7 months after the admission of the will to probate or

-4-

before the expiration of any extended period, the surviving spouse files a petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate. *The filing* of the instrument is a complete bar to any claim of the surviving spouse under the will." (Emphases added.) 755 ILCS 5/2-8(b) (West 2016).

Thus, in the first sentence, the statute plainly states that the *filing* of a document renouncing the will is the operative act in effectuating the renunciation. Nowhere does it state that anything else, such as judicial approval, is required. In the final sentence, the statute again states that the *filing* of the document effectuates the renunciation.

¶ 14    The meaning of "file" is not obscure. The United States Supreme Court has explained it thusly: "An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); see also Black's Law Dictionary 642 (7th ed. 1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). Webster's Third New International Dictionary 849 (2002) defines "file" as, *inter alia*, "to place (as a paper or instrument) on file among the legal or official records of an office" and "to return (a law case) to the office of the clerk of a court *without action on the merits*." (Emphasis added.) None of these definitions imply in any way that judicial action is necessary before a document is deemed to be "filed." Accordingly, the plain language of section 2-8 of the Act specifies that a renunciation is accomplished by the filing of an appropriate document.

¶ 15    As the meaning of section 2-8 is clear, we have no occasion to resort to external aids of construction. *Moore*, 219 Ill. 2d at 479. These include matters of public policy, which may be considered only to resolve an ambiguity in a statute. *People ex rel. Madigan v. Bertrand*, 2012

IL App (1st) 111419, ¶ 36; *Golladay v. Allied American Insurance Co.*, 271 Ill. App. 3d 465, 469 (1995) (citing *Chapman v. Richey*, 78 Ill. 2d 243, 248-49 (1980)). In this case, respondents have failed to establish that section 2-8 is ambiguous, and our reading of the statute indicates that it is not. As such, any consideration of the purpose behind the statute is not relevant to our inquiry; our only task is to apply and enforce it as it is written. *Madigan*, 2012 IL App (1st) 111419, ¶ 36. Accordingly, we hold that the renunciation was complete when it was filed and that George's subsequent death is immaterial.

¶ 16    We recognize that this court stated in *Mondfrans*, 2014 IL App (2d) 130205, ¶ 3, that "[e]ven if [the decedent] or [his heir] had petitioned to renounce the will while [the decedent] was alive, his right to renounce would have abated upon his death, because there was no concealment." As indicated by the prefatory phrase "even if," these facts simply were not before the *Mondfrans* court. As such, this statement is pure *dictum*, and *obiter dictum* at that. *Obiter dictum* consists of "remark[s] or expression[s] of opinion that a court uttered as an aside." *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009). Judicial *dictum*, conversely, is "an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause." *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). As the facts hypothetically suggested in the *Mondfrans* court's remark were not before the court, this clearly was more an aside than an expression of an opinion on a point argued by counsel. Thus, the remark constitutes *obiter dictum*, which "is not binding as authority or precedent." *Id*.

¶ 17    Because the renunciation was complete, we fail to see how George's subsequent death somehow undid it. Though there is no Illinois case directly on point, other jurisdictions have considered the effect of a spouse's death after that spouse had renounced a will. In *In re*

*Renunciation of Will of Sayre*, 415 S.E.2d 263, 265-66 (W.V. 1992), after holding that the right to renounce is personal to a surviving spouse, the court went on to hold that, where a renunciation is complete prior to a surviving spouse's death, it may be given effect despite that spouse's intervening death. The court elaborated, "[W]here a spouse makes an election to renounce a will prior to such spouse's death, the actual election has already been accomplished." *Id*. at 266. In *Spencer v. Williams*, 569 A.2d 1194, 1196-97 (D.C. 1990), the court held as follows:

> "It is true that, absent exceptional circumstances, death terminates the right of a surviving spouse, whether competent or incompetent, to renounce the will. [Citations.] In the present case, however, [the decedent], acting through her conservator, filed her election to renounce the will while she was still alive. That [the decedent] did not live to receive her share does not alter our analysis."

Hence, these courts held that, so long as the renunciation was complete, a surviving spouse's subsequent death did not undo it.

¶ 18 Respondents' attempts to distinguish these cases are unavailing. Respondents point out that in *Sayre*, 415 S.E.2d at 264, the "County Commission *** approved the renunciation." Whatever the process needed to perfect a renunciation in that case, such a step was unnecessary here, where, as explained above, section 2-8 makes filing the operative act for completing a renunciation. Thus, the distinction respondents point to is not material. Without significant explanation, respondents assert that *Spencer* is distinguishable because "the estate had been put on notice" of the renunciation. It is not apparent to us how this fact affected the validity of the renunciation. Hence, *Spencer* provides sound guidance on the salient issue of when a renunciation has been completed.

¶ 19    Respondents cite a number of cases from foreign jurisdictions.  However, *Cahill v. Eberly*, 38 F.2d 539, 541 (D.C. Cir. 1930), involved a situation where the renouncing spouse did not comply with the statutory requirements for renouncing.  Here, George complied with the requirements of section 2-8.  In *In re Knofler's Estate*, 52 N.E.2d 667, 671-72 (Ohio Ct. App. 1943), unlike in this case, the renouncing spouse did not elect to make a renunciation prior to her death.  Similarly, respondents' citation to *Grammer v. Bourke*, 70 N.E.2d 198, 200 (Ind. Ct. App. 1946), is unavailing, as the surviving spouse did not actually make an election before she died.  In *Hogan v. Roche*, 63 A.2d 794 (N.H. 1949), the court held void an attempt by a guardian to renounce a will on behalf of a surviving spouse; in *Gowing v. Laing*, 77 A.2d 32 (N.H. 1950), a companion case with *Hogan*, the court held that, where the surviving spouse died before renouncing, that right did not survive her.  Neither case helps respondents, as neither involved the death of a surviving spouse *after* that spouse renounced.  *In re Estate of Pearson*, 192 So. 2d 89, 90 (Fla. Dist. Ct. App. 1966), involved a statute that, unlike ours, required judicial action to complete a renunciation.  Other cases cited—briefly—by respondents are not on point.

¶ 20    Respondents also cite a number of Illinois cases that set forth policy considerations underlying the right of renunciation.  See, *e.g.*, *Rock Island Bank & Trust Co. v. First National Bank of Rock Island*, 26 Ill. 2d 47 (1962).  They also cite several cases addressing the right of dower, some going back to the 1850s.  These cases provide, at best, tangential guidance as they predate the enactment of section 2-8 (they obviously do not address its plain language, which is the primary issue here).  Moreover, as they address policy, we have no occasion to consider them given that the statute is not ambiguous.  *Madigan*, 2012 IL App (1st) 111419, ¶ 36.

¶ 21    In sum, we hold that where, as here, a surviving spouse has complied with all the steps specified in section 2-8, the renunciation is complete and the subsequent death of the surviving spouse does not undo it.

¶ 22                                    B. Abatement

¶ 23    Respondents next argue that under Illinois law, where an action is created by statute, it abates upon the death of a party unless there is some statutory provision for its survival. Whether this principle has any bearing upon the instant case presents a question of law, subject to *de novo* review.  See *Vincent v. Alden-Park Strathmoor, Inc.*, 399 Ill. App. 3d 1102, 1104 (2010).  Respondents rely on *Shapiro v. Chernoff*, 3 Ill. App. 3d 396, 401 (1972), which states, "Under Illinois law, if an action is one created by statute, and neither that statute nor any other provides for its survival, the action abates upon the death of a party."  *Shapiro* cites *Creighton v. County of Pope*, 386 Ill. 468, 476 (1944), in which our supreme court observed, "Again, in Illinois, it has long been settled that a cause of action created by statute does not survive unless declared so to do by the statute itself or unless provision for its survival is made by some other statute."

¶ 24    As respondents recognize, for abatement to be a consideration, an action would have to be pending:

> "Although the petition had been filed prior to the death of the surviving spouse, the Court had not yet heard any argument or made any determinations concerning the petition.  As such, the action was merely pending at the time of George's death.  Because there is no law providing for the survival of the action, it abated upon George's death."

However, as explained above, the statute requires nothing beyond filing to perfect the renunciation.  This is not to say that it could not still be challenged and undone; however,

pursuant to the statute, if it were to stand, it would be effective as of the date it was filed. In any event, as the renunciation was complete, it was not abated by George's death. *Cf. Tunnell v. Edwardsville Intelligencer, Inc.*, 43 Ill. 2d 239, 242 (1969) ("So too, when a plaintiff dies after having received a verdict in his favor but before the entry of judgment, his action does not abate and he is entitled to judgment upon that verdict.").

¶ 25                                C. The Assignment and Standing

¶ 26    Respondents also contend that George's right to renounce was personal to him and unassignable. Though there are no cases directly on point, respondents point to some case law that they contend is analogous. They assert, for example, that claims made pursuant to a penal statute are personal and not assignable. See, *e.g.*, *Hart Conversions, Inc. v Pyramid Seating Co.*, 658 N.E.2d 129, 131 (Ind. Ct. App. 1995). Similarly, legal malpractice claims are not assignable. *Clement v. Prestwich*, 114 Ill. App. 3d 479, 480-81 (1983). Respondents contend that the right to renounce, being personal to the surviving spouse (see *Rock Island Bank & Trust Co.*, 26 Ill. 2d 47), should be subject to the same limitation.

¶ 27    Whatever the underlying merits of respondents' argument, it is not on point. George did not assign his right to renounce; he assigned the interest he possessed after exercising his right to renounce. The assignment reads, in pertinent part, as follows:

    "I, George H. Scherr, am an heir of the Estate of Marjorie Friedman a/k/a Marjorie Friedman Scherr, Deceased ('Estate') and am entitled to a distribution from the Estate pursuant to the Renunciation that I filed in said Estate and pursuant to my rights to receive a spousal award in the Estate. I do hereby transfer and assign all my right, title, and interest in the Estate to the George H. Scherr Trust dated March 14, 2002 ('Trust')."

In other words, George did not assign the right to renounce. That right was exercised in accordance with the plain language of section 2-8 of the Act, before George's death. Respondents cite nothing to support the notion that an interest in an estate acquired through renunciation is unassignable. As such, we find this argument unpersuasive.

¶ 28                                    IV. CONCLUSION

¶ 29     In light of the foregoing, we reverse the order of the circuit court of Lake County sustaining respondents' objection to George's renunciation of Marjorie's will. This cause is remanded for further proceedings consistent with this opinion.

¶ 30     Reversed and remanded.